**Janet C. DOADES, Individually, and as Administratrix of the Estate of Thomas W. Doades, and Lynn Doades Bryant, Appellants,**

v.

**Kamal A. SYED, M.D., Hill Country Specialty Clinic, and Sid Peterson Memorial Hospital, Appellees.**

No. 04–01–00640–CV.

Court of Appeals of Texas, San Antonio.

Oct. 9, 2002.

Rehearing Overruled Nov. 19, 2002.

Frank L. Branson, Ted Z. Robertson, Law Offices of Frank L. Branson, P.C., William B. Curtis, Louis S. Hakim, Law Offices of Miller and Curtis, L.L.P., Dallas, for Appellant.

David M. Pruessner, Law Office of David M. Pruessner, Dallas, A. William Arnold, III, A. William Arnold III & Associates, P.C., M. Scott Stehling, Law Office of M. Scott Stehling, Kerrville, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

Opinion by: SARAH B. DUNCAN, Justice.

This appeal arises out of the trial court's dismissal of a medical malpractice lawsuit. We hold the trial court acted within the ambit of its discretion in dismissing the

suit because the plaintiff's expert report is not sufficient and does not represent a "good faith effort to comply with the [statutory] definition of an expert report"; it fails to set forth the standard of care for each health care provider and contains mere conclusions regarding breach and causation. We further hold the trial court did not err in denying an extension of time in which to file a complying expert report because the motion requesting an extension fails to allege that the failure to file a complying report was the result of "an accident or mistake." Finally, we hold the trial court acted properly in reopening the evidence to permit defense counsel to respond to an objection that there was no evidence to support the trial court's attorney's fees award. Given these holdings, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 1999, Thomas Doades presented at the emergency room of Sid Peterson Hospital with abdominal pain. His gallbladder was removed, but the pain continued. A stone in his common bile duct was suspected. Accordingly, the following day, Doades was put under conscious sedation while Dr. Kamal A. Syed performed an "ERCP" procedure in an attempt to locate and remove the stone. Near the end of the procedure, Thomas Doades quit breathing. Although he was resuscitated, he was in essence "brain dead"; and, on September 15, 1999, he was declared legally dead.

On November 15, 2000, Thomas Doades' widow, Janet Doades, and her daughter Lynn filed a medical malpractice lawsuit against Dr. Syed; his employer, Hill Country Specialty Clinic; and Sid Peterson Memorial Hospital. Doades alleged Syed was negligent in "failing to properly monitor Mr. Doades during the procedure, by failing to follow and respond to vital signs,

and by failing to timely and appropriately respond to respiratory arrest, among others." Doades repeated these same allegations against the Hospital.

On December 11, Syed and the Clinic filed special exceptions alleging that Doades' allegation that they "'fail[ed] to timely and appropriately respond to respiratory arrest, among others' ... is vague and does not apprise these Defendants of the particular acts and/or omissions alleged." The Hospital also filed special exceptions alleging that Doades' petition "does not advise [the Hospital] by or through whom any negligence is alleged to have occurred."

On February 12, 2001, Doades attorneys filed an expert report prepared by Dr. Steven Holtzman and dated April 4, 2000. *See* Texas Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1) (Vernon Supp. 2001). Dr. Holtzman's report states in its entirety as follows:

I am submitting the following report to provide a fair summary of my opinion regarding the applicable standards of care, the manner in which the care failed to meet the standards and the causal relationship between that failure and the harm, injury, or damages incurred by the Plaintiff.

I am a physician licensed to practice in all its branches under the laws of the State of Texas. I am a Diplomate of the American Board of Surgery and have been certified since 1978. I have been recertified in 1988 and 1997. I have practiced medicine and surgery since 1972 and am competent to render the opinions hereinafter expressed.

I am familiar with the applicable standard of care in Texas.

I have reviewed the following materials with regard to the medical care and treatment of Thomas Doades: 9/8/99 Sid

Peterson Memorial Hospital admission, 9/7/99 colonoscopy report, office records of Dr. Pelton and the autopsy report. Briefly, on 9/9/99 Dr. T.A. Berg performed laparoscopic cholecystectomy upon Doades at Sid Peterson Memorial Hospital. An operative cholangiogram suggested the presence of a common duct stone. On 9/10/99, Dr. Kamal A. Syed attempted to perform ERCP upon Doades. Dr. Syed gave Doades intravenous Versed and Demerol. After 35 minutes, Dr. Syed was forced to abort the procedure when Doades experienced a cardiorespiratory arrest. Doades was resuscitated but experienced anoxic encephalopathy and expired five days later.

I am of the opinion, based upon reasonable probability that Dr. Syed and the Sid Peterson Memorial Hospital nurse departed from acceptable standards of medical care during the ERCP upon Doades (1) by failing to properly monitor Doades and (2) by failing to timely identify and properly treat cardiorespiratory complications which subsequently developed. Additionally, Dr. Syed and the Sid Peterson Memorial Hospital nurse may have lacked the proper training, proficiency and experience necessary to administer intravenous sedation. It is my opinion that the departure from the acceptable standard of medical care by Dr. Syed and the Sid Peterson Memorial Hospital nurse proximately caused the death of Thomas Doades.

On May 15, 2001, the Hospital moved to dismiss Doades' lawsuit. The Hospital alleged that Holtzman's affidavit was deficient as a matter of law for the following reasons:

(1) Nowhere does the "expert report" filed by [Doades] provide a fair summary that would enable [the Hospital] to know which of the four nurses involved directly in the procedure is alleged to have failed to meet applicable standards of care....

(2) [T]he statement that "the Sid Peterson Memorial Hospital nurse **may** have lacked the proper training, proficiency and experience" is not a statement that the health care provider failed to meet the standards and does not establish the causal relationship between **that failure** and the injury as required by the statute.

(3) [T]he "expert" ... does not state what the standard of care is for the treatment of this patient.

(4) [T]he report just sets forth conclusions but not facts.

The Hospital's motion was supported by its attorney's affidavit, which states "[t]here were four nurses from Sid Peterson Memorial Hospital involved during the procedure."

On June 13, 2001, Doades responded, arguing that Dr. Holtzman's report was sufficient. Alternatively, Doades alleged Dr. Holtzman's report "represents more than a good faith effort to provide a fair summary of [Doades'] claims" and sought a thirty-day extension to provide additional reports pursuant to sections 13.01(f) and (g) of article 4590i. Doades also alleged that "only within the past six weeks [with the release of *American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.2001)] has [the language in Dr. Holtzman's report] been deemed potentially 'insufficient.' Accordingly, [Doades] move[s] the Court for 30 days to comply with this new opinion from the Texas Supreme Court." *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(f)-(g) (Vernon Supp.2001). Doades supported her response with her attorney's affidavit, in which he states his belief that Dr. Holtz-

man's April 4, 2000 report satisfies the statutory requirements.

On June 14, 2001, Syed and the Clinic moved to dismiss Doades' lawsuit. Dr. Syed's motion alleges that Dr. Holtzman's affidavit is deficient as a matter of law, because:

(1) Nowhere does the "expert report" filed by [Doades] provide a fair summary that would enable Dr. Syed to know how he failed to meet the applicable standards of care. . . .

(2) [T]he statement that Dr. Syed **may** have lacked the proper training, proficiency and experience necessary to administer intravenous sedation is not a statement that the health care provider **failed** to meet the standards and does not establish the causal relationship between **that failure** and the injury as required by the statute.

(3) [T]he "expert" . . . does not state what the standard of care is for the treatment of this patient.

(4) [T]he report just sets forth conclusions but not facts.

The Clinic's motion alleges Dr. Holtzman's report is deficient as a matter of law, because it "does not mention or provide any of the statutory requirements with regard to Defendant Hill Country Specialty Clinic"; and "no additional report has been produced regarding Hill Country Specialty Clinic."

The following day Doades filed Dr. Holtzman's supplemental report. This supplemental report states in its entirety as follows:

I am submitting the following supplemental report to provide a further explanation of my opinions regarding the applicable standards of care, the manner in which the care failed to meet the standards and the causal relationship between that failure and the ultimate death of Thomas Doades.

I am a physician licensed to practice in the State of Texas. I am a Diplomate of the American Board of Surgery and have been certified since 1978. I have been re-certified in 1988 and 1997. I am an advanced cardiac life support (ACLS) provider, certified by the American Heart Association until 2003. I have practiced medicine and surgery since 1972, and as such I have the qualifications to offer opinions about the care and treatment provided to Thomas Doades.

I have performed over 400 laparoscopic cholecystectomies. Additionally, I have performed several hundred procedures under conscious sedation, as was done for Mr. Doades. I have observed and participated in ERCP procedures. Accordingly, I am familiar with the applicable standard of care for this case.

I have reviewed the following medical records regarding Thomas Doades: the 9/8/99 Sid Peterson Memorial Hospital admission; the 9/7/99 colonoscopy report; the office records of Dr. Pelton and the autopsy report for Mr. Doades.

On 9/9/99 Dr. T.A. Berg performed laparoscopic cholecystectomy upon Mr. Doades at Sid Peterson Memorial Hospital. An operative cholangiogram suggested the presence of a common duct stone. On 9/10/99, Dr. Syed attempted to perform ERCP upon Mr. Doades. The procedure began at 1230. Dr. Syed gave Doades intravenous Versed and Demerol during the course of this procedure. Thirty-five minutes into the procedure, Dr. Syed was forced to abort the procedure when Mr. Doades became agitated and then experienced a cardiorespiratory arrest. Mr. Doades was intubated and later resuscitated but expe-

rienced anoxic encephalopathy, and he expired five days later.

The standard of care requires both the physicians and the nurses using conscious sedation for a patient to provide careful surveillance to insure the safety of the patient. Blood pressure and pulse should be determined at frequent intervals and pulse oximetry and EKG should be continuously monitored. Additionally, the physician and nurses assisting the physician should be well-trained in the recognition and treatment of complications arising from the administration of sedating drugs. A minimum requirement is for the physician to be capable of treating respiratory and/or cardiac arrest in accordance with the ACLS guidelines.

It is my opinion that Dr. Syed and the nurses attending the procedure (which nurses were charged with which monitoring obligations is impossible to tell without oral depositions as the notes in the medical records are unclear) violated the standard of care regarding conscious sedation by (1) failing to property monitor Mr. Doades, (2) failing to timely identify the signs and symptoms of cardiorespiratory arrest and (3) failing to properly institute treatment in a timely fashion upon development of cardiorespiratory complications. These violations of the standard of care by Dr. Syed and the nurses assisting him proximately caused the death of Thomas Doades.

On June 29, 2001, Doades responded to the dismissal motions filed by Syed and the Clinic in the same manner in which she had earlier responded to the Hospital's motion.

On July 10, Dr. Syed and the Clinic filed supplemental motions to dismiss. According to the Clinic's motion, neither of Dr. Holtzman's reports "mention[s] or provide[s] any of the statutory requirements with regard to Defendant Hill Country Specialty Clinic." Dr. Syed's motion reiterates the allegations in his original motion and states that Dr. Holtzman's supplemental report is likewise deficient because it "still fails to provide a fair summary of Defendant's departure from the standard of care and . . . fails to link any departure from the standard of care to the damages claimed by Plaintiff." The motion goes on to argue that, "[w]ith regard to the failure to monitor, the report does not state how Defendant failed to properly monitor Mr. Doades"; it "does not state what monitoring took place, what monitoring should have been conducted or how the monitoring that was taking place was insufficient." "With regard to failing to timely identify the signs and symptoms of cardiorespiratory arrest, the report does not state what signs and symptoms of cardiorespiratory arrest should have been identified, by whom, what would have been 'timely' nor does it take into account Mr. Doades prior heart condition and heart stent." "Finally, with regard to the failing to properly institute treatment in a timely fashion, the report fails to state what treatment was instituted, why such treatment was substandard, what treatment would have been 'timely' and who should have instituted what treatment." The motion further asserts that Dr. Holtzman's statement regarding causation is conclusory.

On July 9, 2001, at the hearing on the Hospital's dismissal motion, Doades' attorney stated that Dr. Holtzman's "supplemental report . . . is not before you and I'm not here to say that you should consider it. In fact, much to the contrary. The only thing before you is the April 4th, 2000 report and that's all we're here to talk about." Dr. Syed's and the Clinic's attorney disagreed, stating that the supplemental report demonstrates that "it's not an accident or mistake why the first

report was insufficient, because, apparently [Doades'] counsel knew it was not sufficient"; moreover, the Clinic's attorney argued, the supplemental report establishes that Doades' attorney had "gotten the chance to file a supplemental report and it's still insufficient." At the conclusion of the hearing, the trial court announced that he would deny Doades' motion for an extension of time, grant the defendants' motions to dismiss, and award $14,000 in attorney's fees to the defendants. Ultimately, the trial judge signed written orders memorializing his oral rulings.

### ADEQUACY OF EXPERT REPORT

■ Doades first argues Dr. Holtzman's April 4, 2000 report complies with the statutory requirements and represents a "good faith effort to comply with the [statutory] definition of an expert report." We disagree.

### *Applicable Law and Standard of Review*

Within one hundred and eighty days after filing a health care liability claim, a claimant must provide "counsel for each physician or health care provider one or more expert reports." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1) (Vernon Supp.2001). In this context, an "expert report" "means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6).

■ "[I]f it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section," the "court shall grant a motion challenging the adequacy of [the] expert report." *Id.* § 13.01(*l*). Although an expert report "need not marshal all the plaintiff's proof, ... it must include the expert's opinion on each of the elements identified in the statute." *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex. 2001). Thus, "the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Id.* at 879. "A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements." *Id.* In deciding whether this standard is met, a trial court "should look no further than the report." *Id.* at 878.

We review the trial court's ruling under an abuse of discretion standard. *Id.* at 877. "Under this standard, a reviewing court may not disturb the trial court's resolution of factual issues, even if the reviewing court would have decided the issue differently, unless the resolution is shown to be arbitrary and unreasonable." *Morrill v. Third Coast Emergency Physicians, P.A.,* 32 S.W.3d 324, 327 (Tex.App.-San Antonio 2000, pet. denied) (citing *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992)). "A trial court's resolution of a factual issue is arbitrary and unreasonable if the relator establishes that the trial court could reasonably have reached only one decision." *Id.*

### *Discussion*

We hold Dr. Holtzman's April 4 report does not constitute a good faith effort to

comply with the requirements of section 13.01 because it fails to set forth the standard of care for each of the defendant health care providers and contains mere conclusions regarding breach and causation. *See Palacios*, 46 S.W.3d at 879 (report that merely states conclusions regarding statutory requirements is insufficient); *id.* at 880 ("Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently."). Accordingly, the trial court was authorized to dismiss Doades' lawsuit.

### SECTION 13.01(G) EXTENSION OF TIME

Doades next argues the trial court erred in denying her motion for an extension of time under section 13.01(g), because the uncontroverted evidence establishes that the failure to file a complying report was neither intentional nor the result of conscious indifference; and the defendants were estopped from challenging the sufficiency of Dr. Holtzman's April 4 report by their failure to raise the deficiencies in the report before the expiration of one hundred and eighty days. We disagree on both counts.

### *Applicable Law and Standard of Review*

"[I]f a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection." TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(g) (Vernon Supp.2001). "[I]n the context of sec-

tion 13.01(g), an accident or mistake is characterized by a person's inadequate knowledge of the facts or an unexpected happening that precludes compliance with the statute." *De Leon v. Vela*, 70 S.W.3d 194, 201 (Tex.App.-San Antonio 2001, pet. denied). We review the trial court's ruling on a motion for extension of time to file a complying report under the abuse of discretion standard discussed above.

### *Discussion*

Doades first contends the defendants are estopped to challenge the adequacy of Dr. Holtzman's April 4 report by their failure to raise the deficiencies before the one hundred and eighty days expired. We disagree. Doades does not cite, and we have not found, any authority remotely suggesting a defendant has a duty to point out the deficiencies in an expert report before the expiration of one hundred and eighty days.

Doades next contends her attorney's affidavit "clearly establishes that the alleged failure to comply with the statute's requirements regarding the Section 13.01 expert report was not the result of intentional disregard or conscious indifference but rather was the result of accident or mistake." "Furthermore," Doades contends, "no evidence was presented ... to controvert the affidavit and sworn testimony of [Doades' attorney].... Consequently, ... the Trial Court abused its discretion in denying the 30–day extension." We again disagree.

The final paragraph of Doades' attorney's affidavit is the only paragraph to address the need for an extension. It states as follows:

> I was aware that Texas law required an expert report identifying the opinions of an expert. I was aware that the report needed to be filed within 180 days of the date of the Original Petition's filing. I

filed [Dr. Holtzman's April 4 report] within 90 days and Defendant's counsel never raised any complaints as to its adequacy before 180 days; therefore, I believed that Defendant's counsel shared in my belief that the report was sufficient under the terms of § 13.01 of art. 4590i. It is my belief that Dr. Holtzman's letter of April 4, 2000 complies with those requirements. I was not consciously indifferent to the fact that an expert report needed to be filed, nor was I consciously indifferent to the contents of Dr. Holtzman's report.

Thus, Doades' attorney nowhere states in his affidavit the nature of his "mistake or accident"; indeed, his affidavit does not even claim "mistake or accident" as the reason for filing a noncomplying report. In short, Doades' attorney's affidavit provides no reason to believe his failure to file a complying report was caused by his "inadequate knowledge of the facts or an unexpected happening that preclude[d] compliance with the statute." We therefore hold the trial did not err in denying Doades' motion for an extension of time under section 13.01(g). *See De Leon*, 70 S.W.3d at 201.

Citing *Whitworth v. Blumenthal*, 59 S.W.3d 393, 401–02 (Tex.App.-Dallas 2001, pet. dism'd by agr.), *Gutierrez v. Walker*, 50 S.W.3d 61, 65–66 (Tex.App.-Corpus Christi 2001, pet. granted), and *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 536–37 (Tex.App.-Texarkana 1998, no pet.), the dissent states that "[t]hree of our sister courts have concluded that evidence that an attorney mistakenly believed an expert report complied with the Act is sufficient to establish mistake and to negate conscious indifference" and contends we should do likewise. However, these holdings by our sister courts are at odds with this court's decision in *De Leon*, in which the court held that the trial court did not err in denying a section 13.01(g) extension

because the movant failed to establish either "inadequate knowledge of the facts or an unexpected happening that precludes compliance with the statute." *De Leon*, 70 S.W.3d at 201.

### SECTION 13.01(F) EXTENSION

■ Doades next argues the trial court erred in denying her motion for an extension of time to file her report under section 13.01(f). We disagree.

The trial "court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13(f) (Vernon Supp.2001). However, the report must then be filed no later than 210 days after the lawsuit is filed. *See id.*

Doades' lawsuit was filed November 15, 2000; therefore, the 210th day after the date the lawsuit was filed June 13, 2001. By that date, Doades had not filed an "expert report" within the meaning of section 13.01(r)(6). Accordingly, we hold the trial court did not err in denying Doades' motion for an extension of time under section 13.01(f).

### ATTORNEY'S FEES

■ Finally, Doades argues the trial court erred in awarding attorney's fees to Syed, the Hospital, and the Clinic because, at the time of the trial court's oral rulings, there was no evidence to support the awards; the court thus relied upon the attorney's representations, stating "You're an officer of the Court and I considered that as testimony." However, Doades' attorney objected, stating "there is no evidence before the Court in a form sufficient to support attorney's fees." Therefore, the defendants' attorneys filed affidavits detailing the services rendered and the amount of fees charged and stating that

the amounts charged were reasonable, necessary, and customary for similar work in the county of suit. And, at a hearing held the day final judgment was signed, the defendants' attorneys testified in support of the fee claims. According to Doades, the attorney's fees evidence contained in the affidavits and reiterated at the hearing came too late. We disagree.

## Applicable Law and Standard of Review

Article 4590i requires an award of attorney's fees and costs of court "as sanctions" "[i]f a claimant has failed, for any defendant physician or health care provider, to comply with Subsection (d) of this section within the time required." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Supp.2001). "Statutes providing that a party . . . 'shall be awarded' . . . attorney fees are not discretionary." *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998). But even a mandatory award of attorney's fees must be supported by evidence. "[T]o rule... without supporting evidence" constitutes an abuse of discretion. *Id.* at 21. However, a trial "court may permit additional evidence to be offered at any time," "[w]hen it clearly appears to be necessary to the due administration of justice." TEX.R. CIV. P. 270. We review a trial court's decision to reopen the evidence under the abuse of discretion standard. *See Forrest v. Hanson,* 424 S.W.2d 899, 907 (Tex.1968).

Under the circumstances presented, we hold that the trial court did not abuse its discretion in reopening the evidence.

### CONCLUSION

Because Doades' attorney filed an inadequate expert report and failed to claim or offer evidence tending to establish that the filing of the inadequate report was the result of an accident or mistake, the trial court did not err in granting the defendants' motions to dismiss. Nor did the court err in reopening the evidence to permit the defendants' attorneys to submit proof of attorney's fees. Accordingly, we affirm the trial court's judgment.

Dissenting opinion by CATHERINE STONE, Justice.

CATHERINE STONE, Justice, dissenting.

The majority holds that Doades' attorney did not tender any evidence to support an extension of time under section 13.01(g). In order to be entitled to a section 13.01(g) extension, the Doades had the burden to show some excuse of accident or mistake in order to establish that they did not act "intentionally" or with "conscious indifference." *De Leon v. Vela,* 70 S.W.3d 194, 200 (Tex.App.-San Antonio 2001, pet. denied).

The Doades' attorney, William B. Curtis, stated in his affidavit that he was aware of Texas law and believed the expert report satisfied the Act's requirements. Curtis further noted that he filed the expert report within 90 days of filing the lawsuit, and defense counsel never complained that the report was inadequate; therefore, Curtis believed that defense counsel shared his belief that the expert report was sufficient.

The basis for the majority's holding is that Curtis "nowhere states in his affidavit the nature of his 'mistake or accident' " or claims " 'mistake or accident' as the reason for filing a noncomplying report." Three of our sister courts have concluded that evidence that an attorney mistakenly believed an expert report complied with the Act is sufficient to establish mistake and to negate conscious indifference. *Whitworth v. Blumenthal,* 59 S.W.3d 393, 401–02 (Tex.App.-Dallas 2001, pet. dism'd by agr.); *Gutierrez v. Walker,* 50 S.W.3d 61, 65–66 (Tex.App.-Corpus Christi, pet. granted); *Horsley–Layman v. Angeles,* 968 S.W.2d

533, 536–37 (Tex.App.-Texarkana 1998, no pet.). The fact that Curtis stated that he "believed" the report complied with the act, as opposed to stating that he "mistakenly believed" the report complied the act cannot be the basis for denying a section 13.01(g) request. Such a position elevates form over substance, and a trial court should focus on the substance of an affidavit not certain "catch" words. If an attorney "believes" an expert report is sufficient, and the expert report is not, then the attorney's belief is necessarily mistaken.

Although an attorney may be negligent in failing to ensure that an expert report satisfies the Act's requirements, negligence does not equate to conscious indifference. *See Perry v. Stanley*, 83 S.W.3d 819, 2002 WL 1430409, at *6 (Tex.App.-Texarkana Jul.3, 2002, no pet. h.); *see also Roberts v. Medical City Dallas Hosp., Inc.*, 988 S.W.2d 398, 403 (Tex.App.-Texarkana 1999, pet. denied) (failure to read statute only negligent not conscious indifference). This is particularly true under the circumstances in this case where Curtis filed the report 90 days prior to the deadline, and the defendants waited until the 180–day deadline had passed to complain. Because Curtis's affidavit negating conscious indifference was uncontroverted, the trial court abused its discretion in denying the section 13.01(g) extension. *See Whitworth*, 59 S.W.3d at 401 (holding trial court abuses its discretion in denying extension if plaintiff's evidence negating conscious indifference is uncontroverted); *Landry v. Ringer*, 44 S.W.3d 271, 275 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (same).

Because the majority holds otherwise, I respectfully dissent.