NUMBER 13-03-368-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      
 
SHERRIE TAYLOR,                                                                     Appellant,

v.

CHRISTUS SPOHN HEALTH SYSTEM 
CORPORATION, D/B/A CHRISTUS 
SPOHN HOSPITAL SHORELINE, 
TEAM HEALTH SOUTHWEST, L.P., 
ARTHUR G. WRIGHT, JR., M.D., COASTAL 
CARDIOLOGY ASSOCIATION, CHARLES 
J. SCHECHTER, M.D., RAYMOND H. 
GRAF, M.D. A/K/A RAY GRAF, M.D.,                                         Appellees.
                                                                                                                                      

On appeal from the 319th District Court of Nueces County, Texas.
                                                                                                                      

O P I N I O N
                     Before Justices Yañez, Rodriguez, and Garza
Opinion by Justice Garza

          Sherrie Taylor appeals from the decision of the trial court to grant a motion to
dismiss her cause of action for medical malpractice based on the inadequacy of her expert
report. Because the trial court did not abuse its discretion in determining that Taylor’s
expert report failed to comply with the statutory requirements established by the Medical
Liability Insurance Improvement Act,


 we affirm.  
          Taylor, individually and as heir and representative of the estate of Ronald C. Taylor,
deceased, brought suit against appellees, Christus Spohn Health System d/b/a Christus
Spohn Hospital Shoreline, Team Health Southwest, L.P., Arthur G. Wright Jr., M.D.,
Coastal Cardiology Association, Charles J. Schecter, M.D., and Raymond H. Graf, M.D. 
Taylor alleged that the death of her husband, Ronald, was due to appellees’ negligence
in failing to manage and timely and accurately diagnose Ronald’s cardiac condition and in
failing to perform tests necessary to diagnose and recognize Ronald’s condition. In
compliance with article 4590i, section 13.01 of the Texas civil statutes, Taylor filed an
expert report by James Watson, M.D., accompanied by Dr. Watson’s curriculum vitae. See
Tex. Civ. Prac. & Rem. Code Ann. §74.351 (Vernon Supp. 2004).


 
          The defendants filed a motion to dismiss based on Dr. Watson’s expert report. The
trial court granted their motion after a hearing.


 Taylor now brings this appeal alleging that
the trial court abused its discretion by granting the motion to dismiss. Specifically, Taylor
argues that she demonstrated the required good faith effort to show compliance with the
requirements of article 4590i, section 13.01. Appellees respond that the report was
conclusory and that it improperly grouped all the defendants together, thereby failing to
specifically address the standard of care and breach of duty with respect to each
defendant.
Applicable Law and Standard of Review
          In order to bring a medical malpractice claim, a plaintiff must comply with the
requirements for filing an expert report. Under the statute applicable at the time this report
was filed, a claimant had to provide for each physician or health care provider one or more
expert reports within one hundred and eighty days of filing a health care liability claim. See
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 (repealed
2003).


 An expert report is defined as “a written report by an expert that provides a fair
summary of the expert’s opinions as of the date of the report regarding applicable
standards of care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that failure and
the injury, harm, or damages claimed.” Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).
          When presented with an expert report, the trial court must determine whether it
represents a good faith effort to comply with the statutory definition of expert report. 
American Transition Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). 
The statute requires that the report include a fair summary of the expert’s opinions for each
defendant. Palacios, 46 S.W.3d at 878. If the court finds, after a hearing, that the report
does not represent a good faith effort to comply with the statute, the court shall “grant a
motion challenging the adequacy of [the] expert report.” Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(l). Although an expert report does not need to marshal and present all the
plaintiff’s proof of malpractice, it must include the expert’s opinion on each of the elements
identified in the statute. Palacios, 46 S.W.3d at 878. Essentially, the report must: (1)
inform the defendant of the specific conduct the plaintiff has called into question; and (2)
provide a basis for the trial court to conclude that the claims have merit. Id. at 879. A
report that merely states the expert’s conclusions about each element (standard of care,
breach, and causation) does not fulfill these purposes. Id.
          An expert report may not assert that multiple defendants are all negligent for failing
to meet the standard of care without providing an explanation of how each defendant
specifically breached the standard and how that breach caused or contributed to the cause
of injury. See Eichelberger v. St. Paul Med. Ctr., 99 S.W.3d 636, 638 (Tex. App.–Dallas
2003, pet. denied) (“the expert report must provide, for each defendant, a fair summary of
the expert’s opinions with respect to . . . standard of care, breach of that standard and
causation.”); Wood v. Tice, 988 S.W.2d 829, 831 (Tex. App.– San Antonio 1999, pet.
denied) (“The report must specifically refer to the defendant and discuss how that
defendant breached the applicable standard of care.”). Collective assertions of negligence
against various defendants are inadequate. See, e.g., Doades v. Syed, 94 S.W.3d 664,
671-72 (Tex. App.–San Antonio 2002, no pet.) (expert report inadequate because it failed
to set forth standard of care for each defendant individually and contained mere
conclusions regarding breach and causation); Rittmer v. Garza, 65 S.W.3d 718, 722-23
(Tex. App.–Houston [14th Dist.] 2001, no pet.) (expert report inadequate because it
referred to defendants collectively and did not explain causal relationship between each
defendant’s individual acts and injury); Whitworth v. Blumenthal, 59 S.W.3d 393, 396 (Tex.
App.–Dallas 2001, no pet.) (“the report . . . does not identify any particular defendant to
which it applies and instead generally asserts ‘the health care providers’ failed to meet the
standard of medical care.”). 
          We review the trial court’s ruling on the adequacy of an expert report under an
abuse of discretion standard. Palacios, 46 S.W.3d at 877; Doades, 94 S.W.3d at 671. 
Under this standard, the appellate court may not disturb the trial court’s resolution, even
if the appellate court would have decided differently, unless the resolution is shown to be
arbitrary and unreasonable. Doades, 94 S.W.3d at 671; see Walker v. Packer, 827
S.W.2d 833, 839-40 (Tex. 2002). A trial court’s resolution of a factual issue is arbitrary and
unreasonable if the appellant establishes that the trial court could reasonably have reached
only one decision. Doades, 94 S.W.3d at 671.
Analysis
          Taylor asserts that the expert report she submitted adequately fulfilled the
requirements of article 4590i, section 13.01. Appellees argue in response that the report
was inadequate because it lumped all of them together, failed to delineate what each
individual party was supposed to do, and failed to identify how each failed to perform. 
Appellees also allege that the report is conclusory with regard to negligence and causation. 
          Dr. Watson’s expert report opined generally that:
[T]he cause of death in the case of Ronald Clayton Taylor was myocardial
infarction due to coronary artery disease and . . . his death, more likely than
not, would have been avoided had the patient undergone diagnostic cardiac
imaging and cardiac catheterization prior to his demise, as should have been
done, but was not done. The failure to diagnose and treat this condition was
negligence by Dr. Wright (ER Physician), Team Health Southwest, L.P.,
Coastal Cardiology, Charles Schecter, M.D. (cardiologist), Raymond Graf,
M.D. (cardiologist), and Spohn Hospital Shoreline Emergency Room, and
that negligence was a proximate cause of the injury and death of Ronald
Clayton Taylor. 
 
The report goes on to describe what occurred when Ronald came to the emergency room
at Spohn Hospital complaining of chest pains.
          Ronald was apparently examined in the emergency room by Dr. Wright and sent to
the cardiologist without being discharged. Dr. Watson asserts that it was negligent of Dr.
Wright, Team Health Southwest, and Spohn Hospital to fail to complete discharge
procedures and patient education with Ronald before sending him to cardiology. He does
not, however, present the standards of care relevant to each of the three different parties. 
Dr. Watson further asserts that such negligence was a proximate cause of Ronald’s death. 
However, he fails to explain what each of these three parties should have done and what
they failed to do. This portion of the expert report fails to meet the standard because it is
both conclusory in nature and fails to specify each defendant’s individual negligent
conduct. See Palacios, 46 S.W.3d at 879.
          In the next paragraph of the report, Dr. Watson discusses the interaction between
the various doctors and asserts that the standard of care required effective communication
between the various care providers regarding the patient’s condition. He concludes without
further explanation: 
In the case of Ronald Clayton Taylor, such communication was not
effectively achieved and as such was negligent and below the ordinary
standard of care and this negligence was a proximate cause of the death of
Ronald Clayton Taylor. Specifically, there is no record of the patient’s chart
accompanying him to the consultative appointment. 
 
Dr. Watson names all six appellees as having failed to meet this standard of medical care. 
          Again, this portion of the report does not meet the statutory requirements for expert
opinions, as Dr. Watson fails to address the standard of care for each defendant and how
each defendant failed to meet such standard. He does not explain which defendant should
have communicated information about Ronald’s condition, or to whom the information
should have been directed, nor does he explain who should have been responsible for
transmission of Ronald’s chart to cardiology. See Rittmer, 65 S.W.3d at 722-23. Dr.
Watson also fails to explain how the failure to achieve effective communication was a
proximate cause of Ronald’s death; he asserts that the information should have been
included on Ronald’s assessment prior to his undertaking an exercise stress test
administered by a cardiologist, but does not explain how, if at all, this information would
have altered the outcome of the cardiology assessment and stress test, and, further, how
any of this relates to the cause of Ronald’s death. See Palacios, 46 S.W.3d at 879. 
          At the end of the report, Dr. Watson asserts that, given Ronald’s patient history, the
standard of care requires that diagnostic imaging be undertaken to assess the presence
of existent myocardial damage and that an eight-to-twelve-hour period of assessment
should have elapsed prior to discharge in order to have definitively determined whether
there was a need to proceed with cardiac catheterization. He notes that this was not done
for Ronald and concludes, “[a]s such the care of Dr. Wright (ER Physician), Team Health
Southwest, L.P., Coastal Cardiology, Charles Schecter, M.D. (cardiologist), Raymond Graf,
M.D. (cardiologist), and Spohn Hospital Shoreline Emergency Room was negligent, and
this negligence was a proximate cause of the death of Ronald Clayton Taylor.” This
portion of the report fails to state what each defendant should have done in order to meet
the standard of care, what each defendant failed to do, and how such failure led to
Ronald’s death. See id. Dr. Watson simply states that various procedures that should
have occurred did not, without specifying which party was responsible for undertaking
which procedures. The parties he lists include an emergency room physician, a hospital,
and a cardiology association, among others, each of which owed different duties to the
deceased; however, Dr. Watson presents only a single standard of care and asserts that
it is equally applicable to all parties involved. 
          Under our appellate standard of review, we may not reverse a trial court’s
determination regarding an expert report unless that determination is clearly arbitrary and
unreasonable. See Doades, 94 S.W.3d at 671. Having reviewed the expert report
provided by Taylor, we find it was not an abuse of discretion for the trial court to conclude
that the report did not represent a good faith effort to comply with section 13.01(r)(6). See
Palacios, 46 S.W.3d at 880. Thus, the trial court did not err in dismissing the case. 
Accordingly, we affirm.  
                                                                                       
                                                                                      _______________________
                                                                                      DORI CONTRERAS GARZA,
                                                                                      Justice
 
 
Opinion delivered and filed 
this the 29th day of July, 2004.