In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-136 CV


____________________



MANUEL HABABAG, M.D., Appellant



V.



MARY GARCIA, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE 


OF THE ESTATE OF MELANY AVILA, DECEASED, ET AL., Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-175,506






MEMORANDUM OPINION


 Appellee Mary Garcia (1) sued appellant Manuel Hababag, M.D. and other defendants
for alleged medical malpractice. Hababag filed a motion to dismiss that challenged
appellee's expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp.
2006). The trial court denied Hababag's motion to dismiss. We reverse and remand.

Background


 Garcia alleged that the negligence of Hababag and other defendants resulted in the
death of Melany Avila, Garcia's twenty-year-old mentally retarded daughter, who resided
at a long-term care facility. Garcia asserted that Avila was prescribed Zyprexa (olanzapine),
which is an antipsychotic drug, and lithium, which is a drug used to treat bipolar and manic-depression disorder. According to Garcia, Melany died of Olanzapine toxicity on September
2, 2003. Garcia maintains that Hababag and the other defendants were negligent in their care
of Avila, and that their negligence proximately caused her death.

 The report by Garcia's expert, toxicologist Dr. Thomas L. Kurt, states that the autopsy
report revealed that Melany Avila died of Olanzapine toxicity, and a toxicology report
appended to the autopsy report stated Avila's blood olanzapine level was 1.1 mg/L. 
According to Dr. Kurt, 1.1 mg/L of olanzapine is a fatal level.

 The report states that despite an increase in Avila's dosage of lithium, and the fact that
"lithium is known as a medication with a narrow therapeutic to toxic ratio where frequent
therapeutic blood monitoring is required[,]" follow-up therapeutic blood monitoring was not
ordered. Kurt's report also stated that on July 11, 2003, Avila's dosage of Zyprexa was
increased to twenty milligrams per day. Furthermore, Kurt opines that "lithium drug
interaction is known with neuroleptics (olanzapine, Zyprexa) at high doses of the neuroleptic
drug[.]" Kurt states that "it is not diagnostically clear [] why Melany Avila was being
prescribed and dispensed Lithium, which is a medication strictly for bipolar or manic-depression disorder, because no such diagnosis existed in her records. Nor [] is it clear why
she was being prescribed and dispensed the antipsychotic, neuroleptic, olanzapine (Zyprexa),
which is for psychotic disorders, without a psychotic diagnosis." At the conclusion of the
report, Kurt opined as follows:

 [d]eficient care at Golden Triangle Living Centers, Inc., contributed to the
demise of Melany Avila. . . . This was caused by medications which were
administered to Melany Avila by Golden Triangle Living Centers, Inc. which
were found . . . to be the cause of her death. Namely, fatal levels were found
of olanzapine (Zyprexa), . . . and [] this level was found to be markedly high
and well above therapeutic levels even when rechecked several months later
after deterioration with time had occurred.


 In an addendum to his report, Kurt noted that after Avila's dosage of lithium was
increased, her blood level of lithium tripled or quadrupled, and he opined that this fact
"strongly indicates that drug interaction was going on that was missed by not ordering
therapeutic drug monitoring of . . . her olanzeprine [sic] (Zyprexa) and lithium blood levels
two weeks after the physician drug orders increasing these doses." The addendum also stated
that Kurt agreed with the paragraphs of Garcia's petition entitled "Facts" and "General
Negligence and Other Causes of Action." In the section of the addendum entitled
"Conclusions," Kurt stated that "physician orders for increases in both olanzepreine [sic]
(Zyprexa) and lithium occurred, . . . without indications for such increases in her records." 
In a second addendum to his report, Kurt noted that Hababag was among "[t]hose providing
[Avila] physician care, as in her diagnoses, prescriptive physician orders for medications and
laboratory test ordering or the lack thereof for therapeutic drug monitoring[.]"

 After Kurt provided the expert report, Hababag filed a motion to dismiss, in which he
asserted that the report failed to implicate any aspect of Hababag's care and treatment of
Avila; Kurt was not qualified to give an expert opinion regarding the standard of care for a
family medicine physician; and Kurt's report did not provide a basis for the trial court to
conclude that Garcia's claims against Hababag have any merit. In her response to the motion
to dismiss, Garcia requested a thirty-day extension of time in the event the trial court found
the report deficient. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp.
2006). The trial court entered an order denying the motion to dismiss, and Hababag then
filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9)
(Vernon Supp. 2006).

Hababag's Issue


 In his sole issue, Hababag contends the trial court abused its discretion by denying his
motion to dismiss. As sub-issues, Hababag asserts that Kurt is not qualified to give an expert
opinion as to the standard of care for a family practice physician; that Kurt's report does not
sufficiently describe the standard of care for a family practice physician or explain how
Hababag breached a standard of care; and Kurt's report did not provide a basis for the trial
court to conclude that Garcia's claims against Hababag have merit.

 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff asserting a health care liability claim must provide each defendant
physician and health care provider with an expert report no later than the 120th day after
filing suit. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351(a), 2003 Tex.
Gen. Laws 847, 875 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
(Vernon Supp. 2006)). The statute defines "expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2006). If a plaintiff
furnishes the required report within the time permitted, the defendant may file a motion
challenging the report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 53;
Palacios, 46 S.W.3d at 878. To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875. When a plaintiff sues
more than one defendant, the expert report must set forth the standard of care for each
defendant and explain the causal relationship between each defendant's individual acts and
the injury. See Doades v. Syed, 94 S.W.3d 664, 671-72 (Tex. App.--San Antonio 2002, no
pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no
pet.); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6) (A claimant must provide each
defendant with an expert report that sets forth the manner in which the care rendered failed
to meet the standards of care and the causal relationship between that failure and the injuries
claimed.). A report that omits any of the statutory elements is not a good-faith effort. 
Palacios, 46 S.W.3d at 879.

 Kurt's report states that Hababag was among "[t]hose providing [Avila] physician
care, as in her diagnoses, prescriptive physician orders for medications and laboratory test
ordering or the lack thereof for therapeutic drug monitoring[,]" and asserts that the lack of
such monitoring after Avila's dosages of lithium and Zyprexa were increased caused the
interaction between the two drugs to be "missed." The report also states that Avila was
prescribed lithium and Zyprexa despite the lack of a diagnosis supporting the administration
of such medications. However, the report does not set forth the applicable standards of care
for Hababag. (2) In addition, the report fails to explain the causal relationship between
Hababag's treatment of Avila and the damages alleged. Because of these inadequacies, the
report does not meet the requirements of the statute, and it does not provide a basis for the
trial court to determine that Garcia's claims have merit. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(r)(6); Palacios, 46 S.W.3d at 875, 879. Therefore, the trial court abused its
discretion in failing to dismiss Garcia's claims. (3) We sustain Hababag's issue. We reverse
the trial court's order denying Hababag's motion to dismiss and remand this cause for the
trial court to address Garcia's request for a thirty-day extension of time. (4) See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c).

 REVERSED AND REMANDED.



 
 STEVE MCKEITHEN

 Chief Justice




Submitted on September 7, 2006

Opinion Delivered October 26, 2006 


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Garcia sued individually and as personal representative of the estate of decedent
Melany Avila.
2. We use the term "report" to refer collectively to Kurt's original report and the
addenda thereto.
3. In his brief, Hababag seeks an award of costs. Because we are remanding the case
to the trial court to address Garcia's request for an extension of time to provide an adequate
report, a determination of entitlement to costs would be premature. 
4. Because we have determined that Kurt's report failed to state the standard of care,
did not explain how Hababag's conduct resulted in the injuries alleged, and did not provide
a basis for the trial court to determine that Garcia's claims have merit, we need not decide
whether the report includes sufficient information demonstrating that Kurt was qualified to
give an expert opinion regarding the standard of care for a family physician.