In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00021-CV
_____

**NIKHILKUMAR C. RAVAL, Appellant**

**V.**

**ANNIE DORSEY, INDIVIDUALLY AND AS NEXT FRIEND OF EZRA
DORSEY, Appellee**

**On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-193,144**

**MEMORANDUM OPINION**

This is an accelerated appeal from the trial court's order declining to dismiss

a health care liability claim pursuant to section 74.351 of the Texas Civil Practice

and Remedies Code.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West

2011). We reverse the trial court's order.

---

[1]Dorsey contends we lack jurisdiction over this appeal because Raval's
objections to the expert reports did not explicitly request dismissal of the case.
Raval concluded his objections by citing section 74.351(b) of the Texas Civil

BACKGROUND

Appellee Annie Dorsey, individually and as next friend of her minor child Ezra Dorsey, sued appellant Dr. Nikhilkumar C. Raval and other defendants for alleged medical malpractice.[2] Dorsey alleged that on August 14, 2010, Ezra and her twin brother were delivered by emergency cesarean section at Christus Hospital—St. Mary ("Christus") at thirty-one weeks of gestation, and Ezra was then admitted to the neonatal intensive care unit ("NICU") at Christus "under the care, custody, control[,] and supervision of Dr. Raval for specialized medical services related to her pre-term and prenatal problems." According to Dorsey's petition, on September 13, 2010, Ezra suffered a skull fracture after she was dropped onto the floor of the NICU by a registered nurse employed by Christus. Dorsey's petition alleged that Raval is the medical director of Christus's NICU

Practice and Remedies Code and stating that because the reports failed to satisfy the requirements of Chapter 74, he had not been served with an expert report, and Raval's prayer requested "such relief, both at law and in equity, to which he is entitled." Section 74.351(b) provides that upon motion, the trial court must dismiss the claim if an expert report is not filed within the time required by section 74.351(a), and the trial court explicitly determined in its order that dismissal was "not appropriate and is DENIED." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9) (West Supp. 2012), 74.351(a), (b) (West 2011). Because section 51.014(a)(9) authorizes an interlocutory appeal from an order denying relief under section 74.351(b), this Court concludes that it has jurisdiction of this case. *See id.* §§ 51.014(a)(9), 74.351(b).

[2] The other defendants are not parties to this appeal.

2

and, as such, is liable for the nurse's acts and omissions "to the extent that she was the apparent and ostensible agent of Dr. Raval, and practicing under . . . Dr. Raval's apparent direction and auspices." Dorsey asserted that Raval was negligent by failing to (1) keep watch over Ezra while she was undergoing treatment in the NICU; (2) properly secure Ezra against falling by using "devices or techniques[;]" (3) properly instruct the registered nurse in the care and treatment of Ezra; and (4) provide "adequate and safe facilities" at Christus's NICU for Ezra's care and treatment.

Concurrently with the filing of her original petition, Dorsey served upon Raval the affidavit and curriculum vitae of registered nurse Cheryl L. Rausch, R.N.B.S.N. In her affidavit, Rausch averred as follows, in pertinent part:

> 6. Christus Hospital—St. Mary, and the doctors and nurses that were responsible for taking care of baby Ezra Dorsey, failed to use [the] standard of nursing care for baby Ezra Dorsey that reasonable and prudent hospitals, doctors[,] and nurses of the same or similar level of certification would have employed under the same or similar circumstances.
>
> 7. Specifically, Christus Hospital—St. Mary ("Christus"), the doctors and nurses that were responsible for taking care of baby Ezra Dorsey, failed to use safe nursing care to prevent baby Ezra Dorsey from being dropped on the floor and suffering a skull fracture, failed to keep watch over baby Ezra Dorsey while she was undergoing nursing care to prevent her from being dropped on the floor at Christus, failed to properly secure baby Ezra Dorsey against falling during her nursing care in NICU at Christus, failed to care and treat baby Ezra Dorsey in a manner that would have prevented her from falling and suffering a

3

skull fracture at Christus, and failed to provide safe facilities in NICU at Christus for the nursing care of baby Ezra Dorsey that would have prevented baby Ezra Dorsey from being dropped on the floor at Christus and suffering a skull fracture.

8. Christus, the doctors and nurses that were responsible for taking care of baby Ezra Dorsey, who was a 31 week preemie should have had safety as a first priority, but instead failed to exercise a Plan of Care resulting in significant trauma when she was dropped on the floor in NICU at Christus.

When Dorsey filed her first amended petition, she served upon Raval the affidavit of neonatologist Dr. Urmila Chaudhry. In the affidavit, Chaudhry averred as follows, in pertinent part:

6. Christus Hospital—St. Mary, the doctors and nurses that were responsible for taking care of Baby Ezra Dorsey failed to use ordinary care in providing treatment for Baby Ezra Dorsey that reasonable and prudent hospitals, doctors and nurses of the same or similar level of certification would have employed under the same or similar circumstances.

7. Specifically, Christus Hospital—St. Mary ("Christus"), the doctors and nurses that were responsible for taking care of Baby Ezra Dorsey failed to use devices and techniques to prevent Baby Ezra Dorsey from falling on the floor and suffering a skull fracture at Christus; failed to keep watch over Baby Ezra Dorsey while she was undergoing treatment to prevent her from falling on the floor at Christus; failed to properly secure Baby Ezra Dorsey against falling during her treatment in the neonatal intensive care unit (NICU) at Christus; failed to care and treat Baby Ezra Dorsey in a manner that would have prevented her from falling and suffering a skull fracture at Christus; and failed to provide safe facilities in the NICU at Christus for the care and treatment of Baby Ezra Dorsey that would have prevented Baby Ezra Dorsey from falling on the floor at Christus and suffering a skull fracture.

4

8. Christus, the doctors and nurses that were responsible for taking care of Baby Ezra Dorsey, should have known that Baby Ezra Dorsey was a premature newborn who would experience significant trauma if she fell/was dropped on the floor in the NICU at Christus.

Raval filed objections to the reports of both Rausch and Chaudhry. In his objections to Chaudhry's report, Raval contended that the report (1) is "conclusory and speculative on the issue of causation, and does not directly link actions or omissions by Dr. Raval to the injuries suffered by the Plaintiffs;" (2) "fails to adequately inform Dr. Raval about precisely what . . . standard of care was required of Dr. Raval, how Dr. Raval breached the standard of care, and what Dr. Raval should have done differently to meet the standard of care;" and (3) "is conclusory and speculative on the issue of causation with respect to Dr. Raval and does not directly link any alleged breach of the standard of care by Dr. Raval to injuries suffered by the Plaintiffs[.]" With respect to Rausch's report, Raval objected that (1) the report opines on causation although Rausch is statutorily prohibited from doing so; (2) the report fails to inform Raval about the required standard of care, how Raval breached the standard of care, and what Raval should have done differently to meet the standard of care; (3) Rausch is not qualified to offer opinions on the standard of care "or alleged breaches thereof pertaining to the type of care rendered to Ezra Dorsey in the Christus St. Mary NICU;" and (4)

Rausch is not qualified to offer opinions on the standard of care or alleged breaches thereof, by a neonatologist.

After holding a hearing on Raval's objections to the expert reports, the trial court sent a letter ruling to the parties and also signed an order. The trial court overruled the objections to Rausch's report "because all objections as to the sufficiency of Nurse Rausch's expert report are waived[,]" and overruled the objection to Chaudhry's opinion as to medical causation. The trial court's order also stated as follows in the remainder of its order:

> However, to the extent that the objection to causation addresses the method by which Dr. Raval's alleged deviation from the standard of care operatively caused the incident the objection is sustained. Nonetheless, inasmuch as all objections as to Nurse Rausch's expert report have been waived for purposes of the report, her expert report standing alone, or in conjunction with the unobjectionable portions of Dr. Chaudhry's expert report would be considered sufficient. Accordingly, dismissal of this case and any other relief is not appropriate and is DENIED.

Raval then filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2012).

In his sole appellate issue, Raval contends that Dorsey did not produce an expert report that met the requirements of section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Specifically, Raval argues that Rausch is not "qualified

6

to provide expert testimony against a physician . . .[,]" and that Rausch's report in conjunction with Chaudhry's report did not constitute an adequate expert report under chapter 74.

## STANDARD OF REVIEW AND PERTINENT LAW

We review a trial court's decision regarding the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A health care liability claimant must provide each defendant physician and healthcare provider with an expert report no later than the 120th day after filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute defines "expert report" as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id*. § 74.351(r)(6). If a plaintiff furnishes the required report within the time permitted, the defendant may file a motion challenging the adequacy of the report. *Id*. § 74.351(*l*). Section 74.351(i) provides claimant may satisfy the requirements of section 74.351

> by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

*Id*. § 74.351(i).

The statute provides that the trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id*. § 74.351(*l*). When determining whether the report represents a good-faith effort, the trial court's inquiry is limited to the four corners of the report. *Wright*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 878. To constitute a good-faith effort, the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to

8

provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. The expert report must set forth the applicable standard of care and explain the causal relationship between the defendant's acts and the injury. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Doades v. Syed*, 94 S.W.3d 664, 671 (Tex. App.—San Antonio 2002, no pet.); *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In determining the adequacy of an expert report, the trial court reviews the pleadings to determine the claims alleged and whether the report addresses those claims. *See Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied); *see also Querry v. Sanders*, No. 06-08-00099-CV, 2009 WL 1097904, at *6 (Tex. App.—Texarkana Apr. 24, 2009, no pet.) (mem. op.).

When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6). An expert report need not marshal all of the plaintiff's proof; however, a report that omits any of the elements required by the statute does not constitute a good-faith effort. *Palacios*, 46 S.W.3d at 878-79. An expert "'must explain the basis of his statements to link his conclusions to

9

the facts.'" *Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "When a party's alleged health care liability is purely vicarious, a report that *adequately* implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (emphasis added); *see also Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.); *In re CHCA Conroe, L.P.*, No. 09-04-453 CV, 2004 WL 2671863, at *1 (Tex. App.—Beaumont Nov. 23, 2004, orig. proceeding) (mem. op.).

## APPLICATION OF THE LAW TO THE FACTS

In his objections to the expert reports, Raval contended that he was served with the expert reports of both Rausch and Chaudhry on October 23, 2012, after Dorsey had filed her first amended petition on October 15, 2012. However, as previously discussed, Dorsey served Rausch's expert report and curriculum vitae upon Raval with the filing of her original petition on September 12, 2012. Raval did not file his objections to Rausch's report until November 2, 2012, when he also filed objections to Chaudhry's report. Section 74.351(a) provides that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." Tex.

10

Civ. Prac. & Rem. Code Ann. § 74.351(a). Because Raval failed to timely object to Rausch's report, the trial court correctly concluded that Raval had waived his objections to Rausch's report. *See id.* However, because Rausch, who is not a physician, is statutorily prohibited from serving as an expert witness on the issue of whether Raval departed from accepted standards of medical care, we examine Rausch's report together with that of Chaudhry. *See id.* §§ 74.351(i), (r)(6), 74.401(a) (West 2011) ("In a suit involving a health care liability claim against a physician for injury to . . . a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician . . . .").

Rausch's report stated that she is a registered professional nurse licensed to practice in Texas, and that her "training and years of experience in the field of nursing," as well as her "reading and continuous nursing education" qualify her as an expert regarding nursing standards of care. Rausch also averred in the affidavit that she has "knowledge of the accepted standards of care for health care providers for the diagnosis, care[,] and treatment of the injury and condition involved in the claim . . . ." In addition, Rausch explained that she had evaluated medical records from Christus and UTMB Health concerning Ezra, and that the records indicate that Ezra sustained a skull fracture after falling from the arms of a registered nurse

11

at Christus, and that Ezra experienced "significant trauma[.]" According to Rausch, the nurses responsible for caring for Ezra failed to use safe nursing care, failed to keep watch over Ezra to prevent her from being dropped on the floor, failed to secure Ezra, and failed to provide "safe facilities" in Christus's NICU that would have prevented Ezra from being dropped. Rausch averred that the nurses failed to exercise a "Plan of Care" that would have made Ezra's safety a priority.

Chaudhry's report is similar to that of Rausch. Chaudhry explains that she is a licensed physician specializing in neonatology, and that she is knowledgeable and experienced with respect to the standards of care applicable to hospitals, doctors, and nurses. Chaudhry's report explained that she had reviewed records from Christus and UTMB Health, and that the records reveal that Ezra was transferred to UTMB "after a fall from the crib which resulted in a skull fracture." According to Chaudhry, a CT scan of Ezra's head "revealed evidence of a linear skull fracture along the right occipital and parietal bone." Chaudhry opined that Christus, the doctors, and the nurses in charge of Ezra's care failed to use ordinary care that prudent hospitals, doctors, and nurses would have used under the same or similar circumstances. Specifically, Chaudhry averred that Christus, the doctors, and the nurses failed to use devices and techniques to prevent Ezra from falling, failed to keep watch over Ezra to prevent Ezra from falling, failed to properly

12

secure Ezra, failed to "care and treat" Ezra in a way that would have prevented her from falling, and failed to provide safe facilities in the NICU at Christus.

Contrary to Raval's assertions in his brief, the trial court did not find that Chaudhry's report was insufficient with respect to "proximate cause." The trial court's order explicitly overruled Raval's objection to Chaudhry's report as to medical causation, and found Chaudhry's report deficient only "to the extent that the objection to causation addresses the method by which Dr. Raval's alleged deviation from the standard of care operatively caused the incident [in question.]" However, this failure is sufficient to require the trial court to sustain Raval's objection. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a). Neither report is sufficiently specific enough as to the applicable standard of care and the alleged breach thereof to justify requiring Raval to remain in the suit. Rausch is not a physician, so the waiver of objections does not fill the gap in Chaudhry's report.

Reviewing the expert reports together, we conclude that the reports do not sufficiently point out the causation requirement as to Raval. The reports do not adequately explain Raval's required standard of care or the alleged breaching of that standard. Accordingly, we sustain Raval's sole issue and reverse the trial court's order. The cause is remanded to the trial court for further proceedings consistent with this opinion.

13

REVERSED AND REMANDED.

                                                  _____

STEVE McKEITHEN
Chief Justice

Submitted on April 24, 2013
Opinion Delivered May 23, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.

14