NO. 07-05-0166-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 18, 2006

_____

CHRISTY NELSON, Individually and as Representative of the Estate
of CHARLES MICHAEL NELSON, Deceased, LAURA G. NELSON,
LACY G. NELSON, and MICHAEL VINCENT NELSON,

Appellants

v.

FRANK M. RYBURN, III, M.D. and JEFFREY NORMAN COLVIN, M.D.,

Appellees

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,278; HON. SAM MEDINA, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellants Christy Nelson, individually and as representative of the estate of

Charles Michael Nelson, deceased, and Laura G. Nelson, Lacy G. Nelson, and Michael

Vincent Nelson (collectively referred to as the Nelsons) appeal from an order dismissing

their health care liability claims against appellees Frank M. Ryburn, III, M.D. (Ryburn) and

Jeffrey Norman Colvin, M.D. (Colvin). The dismissal arose from the Nelsons' failure to

provide an expert report that met the requirements of the Texas Medical Liability and

Insurance Act. The Nelsons contend that the trial court 1) abused its discretion in dismissing the lawsuit and 2) erred in failing to grant an additional 30 days in which to file one or more expert reports. We affirm the order of the trial court.

### Background

Ryburn, an ophthalmologist, performed cataract surgery on Charles Nelson (Charles) on December 6, 2001. Charles had pulmonary fibrosis as a result of Hodgkin's disease and used supplemental oxygen. During the surgery, a local anesthesia was initially administered by Colvin, an anesthesiologist, but it was converted to a general anesthetic due to the inability of Charles to lie flat. Charles experienced some difficulties breathing but later recovered sufficiently to be discharged from the hospital. That night he went into cardiac arrest and died, however.

The Nelsons sued both Ryburn and Colvin for medical malpractice and served upon them expert reports from an ophthalmologist (Matthew B. Goren) and an anesthesiologist (R. Brian Smith). Both defendants moved to dismiss the lawsuit alleging that the documents failed to meet statutory requirements respecting the adequacy of a report. The Nelsons responded to the motions and requested a 30-day grace period to file other reports if the court determined that the originals were inadequate. Upon hearing the motions, the trial court granted those of Ryburn and Colvin but denied that of the Nelsons. Consequently, the suit was dismissed.

### Issue 1 - Good Faith Expert Report

Initially, the Nelsons contend that the reports were sufficient to meet the statutory requirements and the trial court abused its discretion in holding otherwise. *See Bowie*

*Memorial Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (stating that a decision regarding the adequacy of an expert report is reviewed under the standard of abused discretion). We overrule the issue.

*Applicable Law*

One suing for medical malpractice must:

> [n]ot later than the later of the 180[th] day after the day on which a health careliability claim is filed or the last day of any extended period . . . (1) furnish to counsel for each physician . . . one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician . . . .

> TEX. CIV. PRAC. & REM. CODE ANN. art. §13.01(d) (Vernon Supp. 2003).[1] Should the

plaintiff not do so, the trial court must:

> . . . on the motion of the affected physician . . . , enter an order awarding as sanctions against the claimant or the claimant's attorney: (1) the reasonable attorney's fees and costs of court incurred by that defendant; (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

*Id.* §13.01(e); *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003) (stating that the cause must be dismissed if the trial court determines that the report does not represent a good faith effort to comply with the definition of an expert report). However, if a report is timely filed, the opponent may still challenge its adequacy.

Next, to be adequate, the document must be written by an expert and provide a fair summary of his opinions regarding the applicable standards of care, the manner in which

---

[1]As of September 1, 2003, the provision is now found at §73.351 of the Civil Practice and Remedies Code. Furthermore, the claimant no longer has 180 days to serve the report but only 120. TEX. CIV. PRAC. & REM. CODE ANN. §74.351(a) (Vernon Supp. 2005). However, because the lawsuit was filed before September 1, 2003, we cite to the old statute.

the care rendered deviated from those standards, and the causal relationship between the deviation and the injury allegedly suffered. *Id.* §13.01(r)(6); *Chisolm v. Maron,* 63 S.W.3d 903, 906 (Tex. App.Amarillo 2001, no pet.). To comply with this mandate, the expert must do more than merely voice his opinions in the report; instead, he is obligated to inform the defendant of the *specific conduct* called into question and provide a basis for the trial court to conclude that the claims have merit. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001); *Chisholm v. Maron,* 63 S.W.3d at 906. Though this does not require the claimant to marshal all of his evidence, *Rittmer v. Garza,* 65 S.W.3d 718, 723 (Tex. App.–Houston [1st Dist.] 2001, no pet.), more than mere conclusions about the standard of care, its breach, and causation must be stated. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 879. As noted by our Supreme Court in *Bowie Memorial*, some explanation accompanying the expert's utterances is required. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d at 53. Finally, in assessing the adequacy of the document, one can look no further than to its four corners. *Bowie Memorial Hospital v. Wright,* 79 S.W.3d at 52; *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 878.

*Application of the Law*

As previously mentioned, the Nelsons tendered two expert reports purportedly satisfying the requirements of §13.01(d). Through them, Goren and Smith accused Ryburn and Colvin of failing to perform an adequate pre-operative evaluation and assessment to determine if Charles was in good enough health to withstand the effects of the anesthesia and operation. Furthermore, Goren opined that, "[a]s a direct result of performing this

4

elective surgical procedure on Mr. Nelson's right eye under general anesthesia, in the absence of a proper pre-operative medical evaluation, Mr. Nelson lost his life." Similarly, Dr. Smith concluded that "the anesthetic and surgery were the proximate cause of the death of Mr. Charles Michael Nelson."

Assuming *arguendo* that an anesthesiologist is qualified to opine on the standards of care applicable to an ophthalmologist and vice versa, the trial court had basis upon which to exercise its considered discretion and hold that the reports were deficient. Again, they cannot be conclusory. *Bowie Memorial Hosp. v. Wright*, *supra.* And, while they need only be a summary (as opposed to a marshaling of evidence), they must still contain some explanation sufficient to permit the trial court to assess whether the claim has a semblance of merit. *Id.* Here, merely concluding that 1) the failure to perform a pre-operative medical evaluation or 2) the anesthetic and surgery were the proximate cause of death falls short of that mark. Nowhere do either Smith and Goren explain (through summary or otherwise) how those purported defaults caused Charles' death. The experts simply said they did.

Similarly absent is adequate explanation regarding the manner in which Ryburn and Colvin purportedly breached the standard of care, assuming of course the experts adequately opined on the relevant standard. While Dr. Smith suggested that a "CBC," blood gas analysis, pulmonary function test, x-ray, and EKG should have been performed, he failed to discussed what those tests would have uncovered and, whether in light of their results, surgery with a general anesthetic should or should not have been performed.[2] Nor

---

[2]Dr. Smith also states that both doctors erred in discharging the patient with an oxygen saturation of 90-93% while on supplemental oxygen but does not opine that this was a proximate cause of his death. He merely states that the "anesthetic and surgery" were the proximate cause of death.

5

did either expert offer any explanation as to why, under the circumstances present here, the use of a general anesthetic resulted in cardiac arrest sometime after the surgery. Given these deficiencies, the reports were less than the fair summary required by statute. *See Gonzales v. Graves,* No. 07-03-0268-CV, 2004 Tex. App. LEXIS 2403 at *13 (Tex. App.–Amarillo March 16, 2004, no pet.) (holding that it is not enough to state that the failure to diagnose pneumonia was the proximate cause of death).

Nelson cites us to several cases which purportedly contain statements of proximate cause that are similar to that before us.[3] The difference between them and the situation before us, however, is that the experts there either linked their conclusions to the facts of the case or it was obvious from the attendant circumstances how the deficient act or omission resulted in the injury. As previously illustrated, that is missing here.

Simply put, the Nelsons did not comply with art. 4590i, §13.01(d) of the Texas Revised Civil Statutes. Thus, the trial court did not abuse its discretion in dismissing the lawsuit.

### Issue 2 - Grace Period

The Nelsons next argue that the trial court erred by refusing to grant them 30 days in which to proffer adequate reports. We overrule the issue.

Article 4590i, §13.01(g) of the Revised Civil Statutes provides:

---

[3]*Petrus-Bradshaw v. Dulemba,* 158 S.W.3d 630, 634 (Tex. App.–Fort Worth 2005, pet. denied) (performance of a hysterectomy by the surgical method was a direct and proximate cause of the lacerated ureter and the need for additional surgery); *Russ v. Titus Hospital District,* 128 S.W.3d 332, 342 (Tex. App.– Texarkana 2004, pet. denied) (sufficient one-to-one observation or escape proof restraints would have prevented a fall out of a hospital window); *Estate of Birdwell v. Texarkana Memorial Hospital, Inc.,* 122 S.W.3d 473, 479 (Tex. App.–Texarkana 2003, pet. denied) (additional measures, *i.e.* restraints, should have been taken to prevent a fall which resulted in intracranial hemorrhages and paralysis).

6

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection . . . .

The Nelsons' attorney testified at the hearing that he believed the reports contained a fair summary of the standard of care, its breach, and causation. So too did he utter that if he was mistaken, then his mistake was not the result of conscious indifference or intentional disregard of the statute. Yet, our Supreme Court has held that "a purportedly mistaken belief that the report complied with the statute does not negate a finding of 'intentional or conscious indifference.'" *Walker v. Gutierrez,* 111 S.W.3d 56, 65 (Tex. 2003); *see also Kirksey v. Marupudi,* No. 07-03-0076-CV, 2003 Tex. App. LEXIS 10852 at *10 (Tex. App.–Amarillo December 30, 2003, no pet.). Nor does it entitle the claimant to a grace period. *Id.* Therefore, the trial court again did not abuse its discretion in denying the Nelsons' request. Having overruled each issue, we affirm the order of dismissal.

Brian Quinn
Chief Justice