In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-587 CV


____________________



SUSAN KAY CRAIG AND MID COUNTY FAMILY PHYSICIANS


ASSOCIATES, L.L.P., Appellants



V.



THOMAS DEARBONNE, INDIVIDUALLY AND AS WRONGFUL DEATH 


BENEFICIARY OF BETTY DEARBONNE, DECEASED, Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-178,682






OPINION


 

 In this healthcare liability claim brought by appellee Thomas Dearbonne, suing
individually and as wrongful death beneficiary of Betty Dearbonne, appellants Susan Kay
Craig, M.D. and Mid County Family Physicians Associates appeal the denial of their motion
challenging the expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon
Supp. 2007). Appellants raise a single issue for our consideration. We reverse and remand.

Background


 In his petition, Dearbonne alleged that Betty was admitted to Mid-Jefferson Hospital
on January 25, 2005, after visiting the emergency room with complaints of difficulty
breathing, pleuritic pain, fever, and chills. According to Dearbonne's petition, Craig noted
at that time that Betty had a several-week history of upper respiratory infection and shortness
of breath, and she diagnosed Betty with right-sided pneumonia. The petition further alleged
that Betty's condition continued to deteriorate after she was admitted to the hospital, and a
cardiologist eventually diagnosed her with arterial occlusion and Acute Respiratory Distress
Syndrome (ARDS). Betty died on February 2, 2005. Dearbonne's petition alleged that the
appellants' negligence "was a proximate cause of the injuries and damages suffered by Betty
Dearbonne and her resulting death[,]" and Dearbonne sought damages under the Texas
Wrongful Death Act.

 On March 8, 2007, Dearbonne filed an expert report by Lige B. Rushing, M.D. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2007). Appellants filed a
motion to dismiss, in which they argued that the report's statement of causation was
conclusory. Appellants also challenged Rushing's qualifications. The trial court denied
appellants' motion to dismiss, and appellants then filed this interlocutory appeal, in which
they raise one issue for our consideration. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(9) (Vernon Supp. 2007).

The Issue


 In their sole issue on appeal, appellants argue that the trial court abused its discretion
by denying their motion to dismiss because Dearbonne failed to produce an expert report that
complied with the requirements of section 74.351 of the Texas Civil Practice and Remedies
Code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Specifically, appellants argue,
among other things, that Rushing's causation opinion that appropriate treatment would have
prevented Betty's death was conclusory and lacked a factual basis, and that the expert report
did not sufficiently describe "what different treatment Dr. Craig needed to provide to comply
with the standard of care and prevent Mrs. Dearbonne's death[.]" Because they are
dispositive and interrelated, we address these sub-parts of appellants' issue together.

Standard of Review and Pertinent Law


 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff who asserts a healthcare liability claim must provide each defendant
physician and healthcare provider with an expert report no later than the 120th day after
filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute defines "Expert
report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). If a plaintiff furnishes the required
report within the time permitted, the defendant may file a motion challenging the report. 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy 
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 53;
Palacios, 46 S.W.3d at 878; Eichelberger v. Mulvehill, 198 S.W.3d 487, 489-90 (Tex. App.--Dallas 2006, pet. denied). To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875. The expert report must
set forth the applicable standard of care and explain the causal relationship between the
defendant's acts and the injury. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6)
(A claimant must provide each defendant with an expert report that sets forth the manner in
which the care rendered failed to meet the standards of care and the causal relationship
between that failure and the injuries claimed.); Doades v. Syed, 94 S.W.3d 664, 671-72 (Tex.
App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Although an expert report need not marshal and present
all of the plaintiff's proof, a report that omits any of the elements required by the statute does
not constitute a good-faith effort. Palacios, 46 S.W.3d at 878-79.

Application of the Law to the Facts


 In the report, Rushing stated as follows, in pertinent part:

 Mrs. Dearbonne was admitted to the Mid-Jefferson Hospital on 01/25/05. In
Dr. Craig's History & Physical, she lists respiratory distress/shortness of breath
as one of her admitting diagnoses as well as pneumonia.


 Mrs. Dearbonne received intravenous Levaquin and breathing treatments. She
was seen initially at the time of admission by Dr. Susan Craig on 01/25/05. 
Dr. Craig saw her on two subsequent occasions on 01/27/05 and 01/28/05. 
During the course of her hospitalization, her condition deteriorated with the
worsening of her pneumonia and the development of congestive heart failure
as well as arterial thrombosis affecting both legs. She was transferred from
Mid-Jefferson Hospital to Christus St. Mary's Hospital on 01/29/05 where she
remained until her death on 02/02/05.


 . . . .


 As a result of my experience caring for patients in both the hospital and office
setting, I have become familiar with the specific standards of care for a
physician such [as] Dr. Susan Craig regarding the issues in this case and that
[sic] are set forth below.


 The standard of care for a physician such as Dr. Susan Craig requires that she
provide that level of care and treatment that a reasonable prudent physician
would provide under the same or similar circumstances. Additionally, the
standard of care in this case require[s] that Dr. Craig properly examine and
evaluate and assess Mrs. Dearbonne's clinical condition on a daily basis and
that she document those findings. The standard of care also requires that Dr.
Craig provide appropriate treatment for the conditions and as the conditions
evolve in Mrs. Dearbonne's case and adjust and/or provide additional
treatment as indicated by Mrs. Dearbonne's clinical status on a daily basis. 
The standard of care also requires that appropriate consultation with additional
specialist[s] be obtained when indicated.


 . . . .


 Dr. Craig's failure to ever examine Mrs. Dearbonne's lungs is below the
standard of care. If Dr. Craig had examined Mrs. Dearbonne's lungs then
more likely than not [s]he would have found evidence of worsening of the
pneumonia/congestive heart failure. Dr. Craig should have ordered daily chest
x-rays to assess Mrs. Dearbonne's clinical status regarding her congestive
heart failure and pneumonia. 


 If this had been done, then the worsening of her congestive heart
failure/pneumonia would have been detected as it worsened and could have
been effectively treated more likely than not.


 . . . .


 Dr. Craig should have examined and assessed Mrs. Dearbonne on a daily basis
at least. Dr. Craig failed to see Mrs. Dearbonne on 01/26/05. Given the
seriousness of Mrs. Dearbonne's problems she needed daily assessment and
examination. Dr. Craig's failure to see her on 01/26 to examine her and
document the examination is below the standard of care. The harm/injury that
resulted from the failure to examine her daily is that it resulted in the failure
to diagnose/recognize the worsening of Mrs. Dearbonne's
pneumonia/congestive heart failure. If Mrs. Dearbonne had been properly
examined and assessed on 01/26/05, 01/27/05, and 01/28/05 by Dr. Craig, her
worsening congestive heart failure/pneumonia would have been recognized. 
Had this been done, Mrs. Dearbonne could have been effectively treated on
01/26/05, 01/27/05 and 01/28/05. Cardiac and pulmonary consultation should
have been obtained to evaluate Mrs. Dearbonne, [but] this was not done. Mrs.
Dearbonne obviously developed congestive heart failure between 01/25/05 and
01/28/05.


 . . . .


 If proper assessment and treatment had been performed by Dr. Craig on 01/26,
01/27, or 01/28 then more likely than not, Mrs. Dearbonne could have been
successfully treated and would not have died when she did. 


 It is my opinion that Dr. Susan Craig's failures as outlined here proximately
cause[d] Mrs. Dearbonne's death. Had it not been for these failures, Mrs.
Dearbonne would not have died when she did.


 It is my opinion that the most likely sequence of events in this case based on
reasonable medical probability is that Mrs. Dearbonne actually died from
pneumonia, congestive heart failure, sepsis and adult respiratory distress
syndrome.


 Rushing's report explains that the standard of care required Craig to examine and
assess Betty on a daily basis, and that daily chest x-rays should have been performed. In
addition, the report states that if Craig had examined Betty's lungs, then "more likely than
not" she would have found that Betty's pneumonia and congestive heart failure had
worsened, and those conditions "could have been effectively treated more likely than not." 
The report also concludes that if Craig had performed "proper assessment and treatment" on
January 26, 27, or 28, "then more likely than not, Mrs. Dearbonne could have been
successfully treated and would not have died when she did." Rushing further concludes in
the report that Craig's negligence proximately caused Betty's death, and if Craig had not
been negligent, Betty "would not have died when she did." However, these statements are
conclusory, since they are not linked to the facts and do not explain precisely how Craig's
alleged negligence caused Betty's death. See Wright, 79 S.W.3d at 52; Nelson v. Ryburn,
223 S.W.3d 453, 456 (Tex. App.--Amarillo 2006, no pet.) (Report stating that physician's
failure to perform a proper pre-operative medical evaluation of patient proximately caused
patient's death during surgery and anesthesia was conclusory because its conclusions were
not linked to the facts of the case.). In addition, the report fails to explain what treatment
would have been effective, but was not provided, or whether the treatment Craig provided
would have been effective if it had been started earlier. See Jones v. King, No. 04-07-00341-CV, 2008 WL 183063, at *1, *3 (Tex. App.--San Antonio Jan. 23, 2008, pet. filed) (mem.
op.) (In case involving alleged development of meningitis after implantation of morphine
pump, the causation opinion in the expert report was speculative and conclusory because it
did not explain how the delay caused the disease to worsen or become more difficult to treat,
and the report failed to explain whether earlier treatment would have been effective.); Hardy
v. Marsh, 170 S.W.3d 865, 869-70 (Tex. App.--Texarkana 2005, no pet.) (In case involving
alleged failure to seek consultation with vascular surgeon, expert report stating that failure
to seek such a consultation caused subsequent amputation of the patient's leg was inadequate
because it did not specify what treatment would have been appropriate.); Gonzales v. Graves,
No. 07-03-00268-CV, 2004 WL 510898, at **4-5 (Tex. App.--Amarillo Mar. 16, 2004, no
pet.) (mem. op.) (Statement in report that physician's failure to diagnose pneumonia caused
patient's death was insufficient because the expert report failed to state what the physician
should have done to address the patient's complaints and failed to explain the link between
the physician's negligence and the patient's death.).

Conclusion


 Rushing's causation opinion that appropriate treatment would have prevented Betty's
death lacked a factual basis and was conclusory, and the expert report did not sufficiently
describe what different treatment Craig should have provided to prevent Betty's death. 
Therefore, the report did not discuss causation with sufficient specificity to inform appellants
of the conduct Dearbonne has called into question and to provide a basis for the trial court
to conclude that Dearbonne's claims have merit. See Palacios, 46 S.W.3d at 875. We
sustain issue one. (1) Accordingly, we reverse the trial court's judgment and remand the cause
to the trial court to consider whether to grant Dearbonne a thirty-day extension of time sua
sponte to cure the deficiencies in the expert report. See Leland v. Brandal, No. 06-1028,
2008 Tex. Lexis 574, at ** 9-10 (Tex. June 13, 2008).

 REVERSED AND REMANDED.




 ______________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on April 10, 2008

Opinion Delivered June 26, 2008


Before McKeithen, C.J., Gaultney and Horton, JJ.



DISSENTING OPINION



 Medical records indicate Dearbonne was treated for pneumonia with an oral antibiotic
for twenty days and then admitted to the hospital. Her condition deteriorated rapidly in the
hospital over four days. Plaintiff's complaint is that her treating doctor did not recognize the
deterioration and obtain a consult or provide effective treatment, presumably through
appropriate monitoring and a different antibiotic or course of medication. Plaintiff's expert
says one failure was in not ordering daily x-rays, because these would have disclosed the
deteriorating condition. While the report could be more detailed in outlining the failures and
identifying what would have been effective treatment, I see no abuse by the trial court of its
discretion.


 ____________________________

 DAVID GAULTNEY

 Justice

Dissent Delivered

June 26, 2008


 
1. We need not address appellants' remaining arguments that are listed as sub-parts of
issue one, as they would not result in greater relief. See Tex. R. App. P. 47.1.