

# NUMBER 13-07-00657-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

EARL ALFORD, JR. AND RITA ALFORD LEWIS,
AS ADMINISTRATOR OF THE ESTATE OF
EARL ALFORD,                                              Appellants,

v.

ALBERTO BELACAZAR, M.D., PAUL FAREK, M.D.,
AND CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION D/B/A CHRISTUS SPOHN HOSPITAL
CORPUS CHRISTI,                                           Appellees.

---

On appeal from the 347th District Court of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellants, Earl Aflord, Jr. and Rita Alford Lewis, filed health care liability claims against Alberto Belalcazar, M.D., Paul Farek, M.D., and Christus Spohn Health System Corporation doing business as Christus Spohn Hospital Corpus Christi ("Christus Spohn") for the death of Earl Alford. Appellants filed an expert medical report by Ralph

Patman, M.D. as to Christus Spohn's liability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2007). Christus Spohn moved to dismiss the claims on the basis that Patman's report was deficient because it did not specify how Christus Spohn's action caused Alford's death. *See id*. § 74.351(r)(6). The court found Patman's report deficient and dismissed appellants' suit. By a single issue, appellants contend that the trial court abused its discretion by dismissing their suit. We affirm.

## I. BACKGROUND

On November 11, 2003, Earl Alford was admitted to Christus Spohn Hospital-Shoreline by Belalcazar for the surgical removal of a colon tumor. During the procedure, Belalcazar injured Alford's colic artery, portal vein, and common duct. These injuries caused bleeding, which Belacazar could not stop. Belalcazar brought in Farek for surgical assistance in controlling the bleeding. Neither physician could stop the bleeding, and Alford died shortly after surgery.

On January 3, 2006, Lewis and Washington filed suit against Belalcazar, Farek, and Christus Spohn. Appellees alleged that Belalcazar and Farek were negligent in their treatment of Alford's condition. They also alleged that Belalcazar left the operating room for nearly one hour and thirty minutes during the procedure, which allowed Alford's condition to deteriorate. Appellees alleged that Christus Spohn operating room nurses were negligent by not asking Belalcazar to return to the operating-room after he left, and by not notifying their supervisors of Belalcazar's absence. Appellees also alleged that the nurses did not timely provide Alford with auto-blood transfusions. As is required by chapter 74 of the civil practice and remedies code, appellees submitted expert medical reports by Joanne Gonjora, R.N. and Patman. *See id*. § 74.351(a) (Vernon Supp. 2007).

On June 2, 2006, Christus Spohn filed its objections to the reports of Gonjora and

2

Patman, alleging that the reports failed to establish a causal link between Christus Spohn's actions and Alford's demise. The trial court, on January 9, 2007, signed an order finding that the reports were deficient because they did not establish causation. The trial court, however, granted appellees a thirty-day extension to file a sufficient report. *See id*. § 74.351(c). Appellees filed an addendum to Patman's report, but they did not attempt to rehabilitate Gonjora's report. Patman's addendum detailed the chronology of events that occurred during Alford's surgery and opined that the nurses' negligence was the "proximate cause" of Alford's death.

Christus Spohn objected to Patman's new report and urged dismissal. A hearing was held on August 2, 2007, and on that date, the trial court dismissed appellants' claims.[1] This appeal ensued. *See id*. § 51.014(a)(10) (Vernon Supp. 2007).

## II. STANDARD OF REVIEW

A plaintiff asserting a health care liability claim must submit an expert report to each health care provider and defendant physician. *Id*. § 74.351(a). A compliant expert report is defined as a written report providing a fair summary of the expert's opinions regarding the standard of care, the manner in which the care rendered by the health care provider failed to meet the standard of care, and the causal relationship between that failure and the harm claimed. *Id*. § 74.351(r)(6). The trial court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6). *Id*. § 74.351(l).

We review a trial court's decision on a motion to dismiss under section 74.351 of the

---

[1] On October 15, 2007, the trial court severed appellants' claims against Christus Spohn from the claims against the other defendants.

civil practice and remedies code for abuse of discretion. *Estate of Regis ex rel. McWashington v. Harris County Hosp. Dist.*, 208 S.W.3d 64, 67 (Tex. App.–Houston [14th Dist.] 2006, no pet.). To constitute a good faith effort, an expert's medical liability report must establish the expert's qualifications, the applicable standard of care, how that standard was breached by the particular actions of the defendant, and how the breach caused the damages claimed by the plaintiff. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878-79 (Tex. 2001). Although an expert report need not marshal and present all of the plaintiff's proof, a report that omits any of the elements required by the statute does not constitute a good faith effort. *Id.*

### III. ADEQUACY OF EXPERT REPORT

Before the trial court, Christus Spohn argued that Patman's report was deficient because it did not allege a causal relationship as required by the health care liability statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Appellants contend that the report established that Christus Spohn's nurses committed two omissions that caused Alford's demise. First, they contend that the nurses did not properly record Alford's blood loss and institute autotransfusion procedures. Appellants point us to the following passage:

> Therefore, it is my medical opinion based upon reasonable medical probability, in the instance of Mr. Alford, who was dying of hemorrhagic shock, failure to accurately record the data available, institute the mechanics of autotransfusion, harvest over a liter of cell saver blood and subsequent failure to administer the autologous blood and/or failure to document the reason why such blood was not administered breached the applicable standard of care in the management and care of Mr. Alford and these acts of omission were proximate causes of Mr. Alford's death.

Appellants contend that this passage represents a good-faith effort to comply the statute's causation element.

4

At the dismissal hearing, Christus Spohn argued that Patman did not draw a causal-link between recording Alford's blood loss and his death. Additionally, it pointed-out that Patman's report focused solely on the fact that a mechanical autotransfussion system was not employed, but it ignored the fact that Alford was receiving traditional blood transfusions during critical moments. Christus Spohn argued that Patman's report was conclusory as to causation because it ignored a critical fact—that a traditional transfusion was in process—to conclude that not using an autotransfusion system also caused Alford's death. We agree.

These two statements are conclusory, since they are not linked to the facts and do not explain precisely how recording Alford's blood loss or using an autotransfusion system instead of a traditional transfusion system led to Alford's death. *See Nelson v. Ryburn*, 223 S.W.3d 453, 456 (Tex. App.–Amarillo 2006, no pet.) (holding that a report stating that a physician's failure to perform a proper pre-operative medical evaluation of patient proximately caused patient's death during surgery and anesthesia was conclusory because its conclusions were not linked to the facts of the case.).

Appellants' second allegation of negligence against Christus Spohn nurses is that they failed to timely summon Belalcazar or notify a supervisor of his absence. They contend that Patman's report sufficiently explains how the delay in addressing Alford's bleeding cause his death. On the other hand, Christus Spohn points to a different section of the report, in which Patman states that, "[h]ad Dr. Belalcazar returned in a timely fashion, one hour and 27 minutes of continued uncontrolled blood loss would have been avoided, and *possibly* the irretrievable shocklike [sic] syndrome as well as the attendant comorbidities that ensued" (emphasis added). It contends that the later statement raises merely the possibility of causation and is insufficient and that the former statement is

5

conclusory.  Indeed, at the August 2 hearing, the trial court noted regarding to the former statement, "How?  That's exactly the little notation I had here when I read this report is how."

The trial court's question remains unanswered on appeal because appellants do not explain "how" the cited passages are not conclusory.  We are, therefore, left with a report that alleges the "possibility" of causation.  A description of only a possibility of causation, however, does not constitute a good-faith effort to comply with the statute.  *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (holding that expert report opining about "the possibility of a better outcome" was insufficient to meet expert report statute); *see also Estate of Allen v. Polly Ryon Hosp. Auth.*, No. 01-04-00151-CV, 2005 Tex. App. LEXIS 1691, at *3, 5 (Tex. App.–Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem. op.) (finding that expert report discussing what was "more likely" or "could have contributed" constituted mere possibilities and thus were not statements of causation).

Thus, we hold that the trial court did not abuse its discretion in dismissing the appellants' suit.  Their sole issue is overruled.

### IV. CONCLUSION

The trial court's dismissal order is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and
filed this the 21st day of August, 2008.

6