In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-240 CV


____________________



MATTHEW M. HOGAN, Appellant



V.



LORI CUNNINGHAM PINTO, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 07-09-09321-CV






MEMORANDUM OPINION



 Appellee Lori Cunningham Pinto sued appellant Matthew M. Hogan and other
defendants for alleged medical malpractice. Hogan filed a motion to dismiss that challenged
appellee's expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp.
2008). The trial court denied Hogan's motion to dismiss. We reverse and remand.

Background


 Pinto alleged in her original petition that she underwent a laparoscopic assisted
hysterectomy performed by Drs. Young and Francis at Memorial Hermann The Woodlands
Hospital. Pinto also alleged that she was readmitted six days later with extreme pain, nausea,
and vomiting, and her physicians determined that her right ureter was obstructed. According
to Pinto's petition, Dr. Hogan unsuccessfully attempted to unblock her right ureter by
inserting a wire from the bladder up toward the kidney. A nephrostomy tube was inserted
into the kidney ". . . to allow it to drain." In her petition, Pinto contended she was then
discharged with "medication for intense pain[,]" and her physicians ultimately "determined
that the ureter had been sewn shut during the laparoscopic assisted hysterectomy performed
by Defendants Young and Francis." Pinto's petition alleged that she underwent a successful
surgery at Methodist Hospital to break the suture, and that she was admitted to Methodist
Hospital on three additional occasions to have her bladder irrigated, to have the catheter
removed from her bladder, and "to have a ureteral stent inserted and the nephrostomy tube
removed."

 Pinto's petition alleged as follows with respect to the care provided by Hogan: 

 In addition to relying on general acts of negligence by Defendant
Mathew M. Hogan, M.D. for submission of this case to the jury, Plaintiff
would point out several specific acts of negligence based on information
provided and gathered to date, and subject to further discovery and
amendment, if necessary, as discovery progresses.


With her original petition, Pinto filed a two-page expert report by Rodney A. Appell, M.D.,
FACS. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Hogan filed an objection to
Appell's report, in which he argued that the report did not demonstrate Appell's
qualifications to opine concerning the standard of care applicable to Hogan in his treatment
of Pinto; that the report fails to identify particular physicians; and the report's statement of
causation was speculative and conclusory. The trial court entered an order sustaining
Hogan's objections to the expert report, and Pinto filed an amended report by Appell. The
amended expert report alleged as follows, in pertinent part:

 The delay in management in this case for over one month resulted in bringing
the patient to Methodist Hospital on August 16 to attempt to pass a universal
stent, which failed. August 24th she then urinated blood clots and returned to
the emergency room, has [sic] her bladder irrigated and was admitted to the
hospital again. August 26th the catheter was removed from the bladder and she
voided more clots and the nephrostomy tube was set to straight drainage again
and she was discharged. She returned to radiology at Methodist Hospital on
September 12, 2005, and under conscious sedation an 8.5 French double-J
ureteral stent was successfully passed from the nephrostomy site past the
obstruction into the bladder and was deployed in the kidney and nephrostomy
was removed. . . .

 

 It is my opinion that after the obstruction could not be passed from
below or above in early July and the patient was continuing to have substantial
discomfort a risk was taken to leave the ureter ligated and waiting for the
suture to dissolve when there was no guarantee that the blood supply to the
ureter would not have been compromised resulting in significant risk to the
kidney and a [sic] open or laparoscopic repair of the ureter should have been
offered to the patient. The patient was not properly informed of the options to
care for this problem and the patient's renal function on the right side was
compromised with ultimate risk of the patient to right kidney loss. Simply
waiting for the suture to dissolve over an extended period of time created an
undue risk for the health and safety of the patient.


 . . . .


 The subsequent medical treatment following the patient's initial hysterectomy
was the direct result of having stitched the ureter closed originally. This
breach can then be extended to the post-operative management of the patient
by Dr. Young, Dr. Francis, and Dr. Hogan, as all forms of management
including surgical repair of the damaged ureter does not [sic] seem to have
been discussed with the patient. Multiple tests had been performed which
clearly showed a complete obstruction of the right ureter. However, the
patient was not given the option of a surgical procedure that would . . . have
prevented the multiple subsequent procedures she underwent resulting in the
prolonged discomfort she endured. The appropriate standard of care in
treating a patient with a complete ureteral obstruction would be to inform the
patient of both invasive and non-invasive procedures, including procedures
that would immediately determine the cause of the obstruction such as simply
opening the area to visual examination. This option was not given to [the]
patient thus breaching the standard of care and making further medical
treatment unnecessary [sic].


 After Appell provided the amended expert report, Hogan filed a motion to dismiss,
in which he asserted that the amended report was conclusory because it fails to describe how
he was involved in Pinto's care or why he had a duty to advise Pinto of surgical options; that
the causation opinion in the amended report was conclusory and "based on assumptions and
inferences that are not supported by the medical facts stated in the report;" and that the
amended report "provides no information or basis for the Court to conclude there is merit to
a number of Plaintiff's claims." The trial court entered an order denying Hogan's motion to
dismiss, and Hogan then filed this accelerated interlocutory appeal. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(9) (Vernon 2008).


Hogan's Third Issue


 In his third issue, Hogan asserts the trial court erred by "determining that appellee's
expert's amended report provided a sufficient factual basis and explanation of how Dr.
Hogan, as opposed to other defendants, caused appellee's damages because the expert's
opinion on causation is conclusory, lacks a factual basis, and is based on assumptions
unsupported by the facts in the report." Because this issue is dispositive, we address it first.

 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff asserting a healthcare liability claim must provide each defendant physician
and healthcare provider with an expert report no later than the 120th day after filing suit.
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008). The statute defines
"expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). If a plaintiff furnishes the required
report within the time permitted, the defendant may file a motion challenging the report. 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 53;
Palacios, 46 S.W.3d at 878. To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875. When a plaintiff sues
more than one defendant, the expert report must set forth the standard of care for each
defendant and explain the causal relationship between each defendant's individual acts and
the injury. See Doades v. Syed, 94 S.W.3d 664, 671-72 (Tex. App.--San Antonio 2002, no
pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no
pet.); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6) (A claimant must provide each
defendant with an expert report that sets forth the manner in which the care rendered failed
to meet the standards of care and the causal relationship between that failure and the injuries
claimed.). A report that omits any of the statutory elements is not a good-faith effort. 
Palacios, 46 S.W.3d at 879.

 Appell's amended report states that the standard of care required all of Pinto's
physicians, regardless of their level of involvement in her operative or post-operative care,
to fully inform Pinto of her surgical options, and the report then states that "all forms of
management including surgical repair of the damaged ureter does [sic] not seem to have been
discussed with the patient." However, the amended report does not link its conclusion to the
facts, in that it does not explain the factual basis for the conclusion that surgical options did
not "seem to have been discussed" with Pinto. See Wright, 79 S.W.3d at 52; Nelson v.
Ryburn, 223 S.W.3d 453, 456 (Tex. App.--Amarillo 2006, no pet.) (Report that stated that
physician's failure to perform a proper pre-operative medical evaluation of patient
proximately caused patient's death during surgery and anesthesia was conclusory because its
conclusions were not linked to the facts of the case.).

 In addition, the report fails to explain the causal relationship between Hogan's
treatment of Pinto and the alleged injuries, as opposed to the treatment provided by Pinto's
other healthcare providers. See Doades, 94 S.W.3d at 671-72; Rittmer, 65 S.W.3d at 722-23;
see also Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6). Because of these
inadequacies, the report does not meet the requirements of the statute, and it does not provide
a basis for the trial court to determine that Pinto's claims have merit. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(r)(6); Palacios, 46 S.W.3d at 875, 879. Therefore, the trial
court abused its discretion in failing to dismiss Pinto's claims. We sustain issue three. We
need not address Hogan's remaining issues, since they would not result in greater relief. See
Tex. R. App. P. 47.1. Accordingly, we reverse the trial court's order denying Hogan's
motion to dismiss and remand this cause to the trial court for further proceedings consistent
with this opinion. See id. § 74.351(b).

 REVERSED AND REMANDED.



 _____________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on August 21, 2008

Opinion Delivered October 9, 2008


Before McKeithen, C.J., Gaultney and Kreger, JJ.



DISSENTING OPINION
 

 I respectfully dissent. The report states that "a[n] open or laparoscopic repair of the
ureter should have been offered to the patient. The patient was not properly informed of the
options to care for this problem and the patient's renal function on the right side was
compromised with ultimate risk of the patient to right kidney loss." Dr. Hogan was treating
a patient with a complete obstruction. The report expresses the opinion that he breached the
standard of care by not informing the patient of the option of a procedure "that would
immediately determine the cause of the obstruction such as simply opening the area to visual
examination." I think the report can only be read as indicating the appropriate medical
treatment should have been to repair the ureter, though the patient should make the decision,
and if that had been done in July, the subsequent unsuccessful medical treatment and
compromised renal function would not have occurred. No one questions the qualifications
of the expert to express these opinions. The report adequately informs the defendant of the
specific conduct that is thought to have caused harm, and is sufficient to allow the claim to
proceed. I see no abuse of discretion by the trial court in denying the motion to dismiss based
on the report presented. 

 

 ___________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered

October 9, 2008