In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-09-00333-CV


____________________



BAPTIST HOSPITALS OF SOUTHEAST TEXAS d/b/a


MEMORIAL HERMANN BAPTIST BEAUMONT HOSPITAL, Appellant



V.



PAUL SEBILE, SR., INDIVIDUALLY AND AS HEIR AND REPRESENTATIVE


OF THE ESTATE OF LAURA SEBILE, PAUL SEBILE, JR.,


LAWRENCE C. SEBILE, ERIC SEBILE, DON C. SEBILE, CLARA J. SEMIEN,


FRANKIE L. COBB AND SHARON K. DEAN, Appellees 


 




On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-182,575






MEMORANDUM OPINION



 We grant the motion for rehearing filed by appellant Baptist Hospitals of Southeast
Texas d/b/a Memorial Hermann Baptist Beaumont Hospital. Accordingly, we withdraw our
previous opinion of December 10, 2009, and substitute the following in its place.

 Appellees Paul Sebile, Sr., individually and as heir and representative of the estate of
Laura Sebile, deceased; Paul Sebile, Jr., Lawrence C. Sebile, Eric Sebile, Don C. Sebile,
Clara J. Semien, Frankie L. Cobb and Sharon K. Dean, as children of the deceased, brought
a healthcare liability claim against appellant Baptist Hospitals of Southeast Texas d/b/a
Memorial Hermann Baptist Beaumont Hospital ("Baptist") and other defendants. Baptist
appeals the denial of its motion challenging the expert reports. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(l) (Vernon Supp. 2009). We reverse and remand.

Background


 In their petition, appellees alleged that after Laura Sebile went to Baptist on October
22, 2006, complaining of shortness of breath and pain, chest x-rays suggested congestive
heart failure. Sebile was referred to a surgeon, Dr. Gordon, and booked for a thoracoscopy
to biopsy her lymph nodes. Appellees contended that the physicians failed to eliminate
congestive heart failure as the cause of Sebile's symptoms and, despite the fact that Sebile
had previously had open heart surgery, did not call for a cardiology consult to clear Sebile
for surgery. According to appellees, Gordon placed Sebile under general anesthesia "without
a single medical consultation[,]" and the anesthesiologist, Dr. Gonzalez, "failed to read the
history and physical which revealed [Sebile] as not fit for surgery." Appellees contended that
during the procedure, Gordon punctured Sebile's heart with an instrument, which resulted
in massive bleeding, and Sebile developed multiorgan failure and died thirteen days later. 
Appellees' petition alleged numerous ways in which Baptist's nursing staff failed to provide
Sebile with proper treatment. Appellees' petition complained only of Baptist's nurses.

 Appellees attached to their petition the expert report of Dr. Shabir Bhimji, a board-certified cardiothoracic and vascular surgeon. In his initial report, Bhimji did not discuss any
alleged acts of medical negligence by Baptist or its nurses or how Baptist's alleged actions
or failures to act contributed to Sebile's death. Appellees subsequently filed additional
reports by an anesthesiologist, Dr. Hector Herrera, and a nurse, Elizabeth Cooper. Herrera's
report discussed Gonzalez's alleged deviations from the standards of care and the causal
relationship between those alleged deviations and Sebile's death. Cooper's report discussed
the alleged deviations from the standards of care by Baptist's nurses and opined that the
nurses' alleged deviations from the standards of care contributed to Sebile's death.

 Baptist filed a motion to dismiss, in which it contended that the expert reports were 
insufficient. The trial court granted appellees an extension of time to file a sufficient expert
report. Appellees filed two additional amended reports by Bhimji. Baptist again moved to
dismiss appellees' claims. Baptist argued that Cooper was unqualified to render an opinion
as to causation concerning the alleged relationship between the nurses' alleged deviations
from the standards of care and Sebile's death; that Herrera's report did not address any
alleged breaches of the standards of care by Baptist's nurses; and that Bhimji's report failed
to establish a causal connection between the treatment provided by Baptist's nurses and
Sebile's death. After conducting a hearing, the trial court denied Baptist's motion to dismiss. 
 Baptist then filed this accelerated interlocutory appeal. See Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(10) (Vernon 2008).

Baptist's Issue


 In its sole appellate issue, Baptist contends that the trial court erred by refusing to
dismiss appellees' claims because appellees did not provide expert reports that presented a
fair summary as to how the actions or omissions of Baptist's nurses allegedly caused Sebile's
death.

Standard of Review and Pertinent Law


 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff who asserts a healthcare liability claim must provide each defendant
physician and healthcare provider with an expert report no later than the 120th day after
filing suit. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009). The
statute defines "expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Id. § 74.351(r)(6). If a plaintiff furnishes the required report within the time permitted, the
defendant may file a motion challenging the report. Id. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy 
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 53;
Palacios, 46 S.W.3d at 878; Eichelberger v. Mulvehill, 198 S.W.3d 487, 490-91 (Tex. App.--Dallas 2006, pet. denied). To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875. The expert report must
set forth the applicable standard of care and explain the causal relationship between the
defendant's acts and the injury. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r)(6)
(A claimant must provide each defendant with an expert report that sets forth the manner in
which the care rendered failed to meet the standards of care and the causal relationship
between that failure and the injuries claimed.); Doades v. Syed, 94 S.W.3d 664, 671-72 (Tex.
App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Although an expert report need not marshal and present
all of the plaintiff's proof, a report that omits any of the elements required by the statute does
not constitute a good-faith effort. Palacios, 46 S.W.3d at 878-79.

Application of the Law to the Facts


 Under the Medical Liability Act ("the Act"), a health care institution is 
included within the definition of "health care provider." Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(12) (vii) (Vernon 2005). Section 74.403(a) of the Act, which sets forth the
qualifications of expert witnesses on causation in health care liability claims, provides as
follows, in pertinent part:

 (a) . . . a person may qualify as an expert witness on the issue of the
causal relationship between the alleged departure from accepted
standards of care and the injury, harm, or damages claimed only
if the person is a physician and is otherwise qualified to render
opinions on that causal relationship under the Texas Rules of
Evidence.


Id. § 74.403(a) (Vernon 2005) (emphasis added). Because Cooper is undisputedly a nurse
rather than a physician, she is unqualified under the Act to offer an opinion as to causation. 
See id. In addition, as discussed above, Herrera's report discussed only Gonzalez's alleged
negligence. Therefore, the only remaining question before us is whether Bhimji's amended
report adequately addresses the causal relationship between the nurses' alleged negligence
and Sebile's injuries and death.

 On page one of his report, Bhimji states, "[i]n brief, the cause of death of Laura Sebile
was due to the direct actions of the surgeon, Dr[.] Fallon, gross negligence of the
anesthesiologist, Dr[.] Gonzalez[,] and the numerous medical mistakes made by the nurses." 
Bhimji's report does not mention the nurses again until page thirteen, where he includes the
following brief discussion in a section entitled "Medical errors by nurses": "The post
operative care of Laura Sebile was compounded with a few medical errors. Some of the drug
errors played a role in causing her death." The last mention of the nurses occurs on the final
page of the report (page seventeen), where Bhimji states as follows: "Why did the nurses in
the Operating room not identify the abnormal INR on the check list is beyond
comprehension? [sic] . . . The death of Mrs. Laura Sebile in my opinion is directly
attributable to the medical negligence by the staff, esp. the [sic] Dr[.] Fallon Gordon
(surgeon) and Dr[.] Gonzalez, and nurses at Memorial Hermann Baptist [H]ospital."

 Bhimji's statements as to the nurses are conclusory, since they are not linked to any 
facts, and they do not explain precisely what the nurses' alleged departure from the
applicable standards of care were, or how the nurses' alleged negligence caused or
contributed to Sebile's death. See Wright, 79 S.W.3d at 52; Nelson v. Ryburn, 223 S.W.3d
453, 456 (Tex. App.--Amarillo 2006, no pet.). Bhimji's report fails to discuss causation with
sufficient specificity to inform Baptist of the conduct of its nurses that appellees have called
into question and to provide a basis for the trial court to conclude that appellees' claims have
merit. See Palacios, 46 S.W.3d at 875. We sustain Baptist's issue. Accordingly, we reverse 
the trial court's order denying Baptist's motion to dismiss and remand the case to the trial
court for entry of a judgment dismissing appellees' claims against Baptist with prejudice and
to award Baptist reasonable attorney's fees and court costs. See Tex. Civ. Prac. & 
Rem. Code Ann. § 74.351(b) (Vernon Supp. 2009).

 REVERSED AND REMANDED.




 STEVE McKEITHEN

 Chief Justice



Submitted on October 22, 2009

Opinion Delivered January 28, 2010


Before McKeithen, C.J., Gaultney and Kreger, JJ.